## TEXAS & P. RY. CO. v. PATTON.

(Circuit Court of Appeals, Fifth Circuit. April 10, 1894.)

No. 204.

1. APPEAL—REVIEW—EVIDENCE—NEGLIGENCE—EXCEPTIONS.

Though, in an action for negligence, defendant's request to charge that plaintiff was guilty of contributory negligence was properly refused, yet where the exception to such charge brings up all the evidence on writ of error, and it appears on the face of the record that there was no evidence of negligence on defendant's part, judgment against him will be reversed, notwithstanding he failed to ask the trial court for a peremptory instruction upon the whole evidence. Toulmin, District Judge, dissenting.

2. MASTER AND SERVANT—NEGLIGENCE—EVIDENCE—MACHINERY.

While a locomotive fireman was descending from a moving locomotive, in a careful and proper manner, the step turned, owing to its being loose, and he was thrown to the ground and injured. The locomotive had just come in from a run, during which the step had been safely used several times. The fireman himself had aided in securing it properly two days before, and there was nothing to show that any one had tampered with it, or that it had been accidentally injured or displaced, but immediately after the accident its fastenings were found to be loose. *Held*, that there was nothing to show negligence on the part of the railroad company.

In Error to the Circuit Court of the United States for the Western District of Texas.

Action by E. M. Patton against the Texas & Pacific Railway Company for personal injuries, in which plaintiff had judgment, and defendant brings error.

T. J. Freeman and Edwards & Edwards, for plaintiff in error.

Millard Patterson, for defendant in error.

Before McCORMICK, Circuit Judge, and LOCKE and TOULMIN, District Judges.

McCORMICK, Circuit Judge. It appears from the bill of exceptions in this case that the following facts were established by the testimony introduced, to wit:

First. The plaintiff, E. M. Patton, was in the employ of the defendant as fireman on a passenger engine at the time; and for some time before the accident his regular work was as a fireman of engine No. 90, which hauls a passenger train from the city of El Paso to Toyah, Tex., a distance of 196 miles, leaving El Paso at about 2:30

p. m., arriving at Toyah about 11:30 p. m., and remaining in Toyah the balance of the night, and all the next day, until about 2 a. m. the morning of the second day, when the engine would return from Toyah to El Paso, hauling a passenger train, arriving in El Paso about 10:30 a. m. on the same day, and again leaving El Paso for Toyah at 2:30 p. m. the next day. The engineer who ran said engine was named A. Steiner.

Second. That it was the duty of the firemen of passenger engines in the employ of defendant to keep the cab of the engine clean, and to clean all that portion of the engine above the running board, to keep the oil cans and lubricators filled with oil, and to generally obey orders of the engineer when the train was running.

Third. That the defendant had at El Paso a roundhouse and repairing shops, and a machinist to inspect and repair the engines, and also had at Toyah a roundhouse, and a machinist to inspect and repair its engines, and that engines coming into each place were inspected and repaired before going out again.

Fourth. When defendant's passenger engines arrived at El Paso, including the engine on which plaintiff worked, the engineer and fireman would get off, and leave the engine attached to the train at the depot, and the engine would then be taken charge of by the yardmen, and an employe called the "hostler" would detach the engine from the train, and take the same down into the yard to coal it, sand it, and do such other things as were necessary, except repair it, and then place the same in the roundhouse, where it would be cleaned by the servants other than the fireman in all its parts beneath the running board, and inspected by the machinist and repaired. The fireman would have ample time after the engine had been placed in the roundhouse to clean out the cab, wipe off his part of the engine and fill his oil cans and lubricators. Then the engine would be taken from the roundhouse, and attached to the train, by the yardman or hostler, where the fireman and engineer would get on the train again to begin their trip. Plaintiff knew all this.

Fifth. There was no rule of the company that prohibited the fireman from getting on the engine for the purpose of filling his oil cans, etc., before it was placed in the roundhouse, nor was there any rule that specified a particular time when he should do this work, the only rule being that he was to have his engine in proper condition to go out when its turn came. There was a rule of the company that the engineer and fireman of a passenger train should not be called for duty within, after they had come in on a trip. That the fireman could select any time that was most convenient for him to clean the cab, fill the oil cans, etc., and that while the engine was hot, and the oil warm, it was more convenient, and could be done in less time than after the engine was cooled off.

Sixth. That passenger engine No. 90 has two steps on the right side. One of these steps is a loop fastened under the tender, and a person getting off the engine backwards would have this step on the left. The other step, which would be on his right, was attached to the rear part of the engine. This latter step, the proof shows,

was loose. The gangway of the engine is where the tender and engine come together, and there is an opening on each side of the engine. These steps were used to get on and off the engine. The step which is claimed in this case to be defective is the step which is attached to the engine. This step consists of a shovel-shaped piece of iron, standing directly out from the engine, firmly fixed to a rod of iron about an inch in diameter, and about 18 inches long, which rod passes up through the iron casting at rear of engine, about 6 or 8 inches thick. A shoulder to this rod fits underneath the casting, and the part passing through above has threads on the upper end, upon which the nut is screwed firmly down on the casting, fastening the rod in the casting so that it will not move. This nut is about 2 inches square, and the thread on the rod extends 5 or 6 inches,—thus making the rod extend above the nut, when the nut is properly screwed down,—and covering this extension above the nut is a tubular piece of brass arranged for ornament, which hides from view that portion of the nut immediately around the threads of the step bar. The step affixed to this bar is about 12 or 14 inches above the track, and the one affixed to the tender is about 6 inches higher.

Seventh. On the 29th of November it was necessary to put a spring on the right side of the engine, and in order to do so this step had to be removed, in order to place a jackscrew under the rear of the engine; and in doing this the rod holding the step was taken out of the casting by unscrewing the nut described in paragraph 6, and the step was replaced on that morning at El Paso, before the engine started on its run to Toyah. In replacing the step the plaintiff assisted the machinist of defendant at El Paso (Rossiter) in tightening up the nut; and the same day the engine left El Paso, taking out a passenger train at the usual hour, 2:30 p. m., and made the run to Toyah. The machinist and plaintiff testified that the nut was properly screwed on at El Paso, and would not have become loose in a trip from El Paso to Toyah and return.

Eighth. That at Toyah some repairs were made to the engine. Alex Mitchell, who was foreman of the shops and yards at Toyah, undertook to make these repairs himself. He had a couple of Chinamen assistants, who placed two jackscrews, one on each side of the front of the engine, and elevated the front. The Chinamen brought another jackscrew and put it down at the rear of the engine, near to this step above described, on the right side of engine. That to put the latter jackscrews in place, to elevate the rear of the engine, it was necessary to remove this step. Plaintiff testified he saw a jackscrew on the ground near this step. Alex Mitchell, the foreman for defendant, testified: That he told the Chinamen to get the jackscrews, and under his direction they placed two jackscrews, one on each side of the front of the engine, but, without any instructions from him, they brought and put another jackscrew on the ground, near the step. That he was out of the roundhouse 5 or 10 minutes while the Chinamen were there, and that this jackscrew near the step was not placed under the engine, in position to elevate it, and that the step was **not**

moved for the purpose of putting the jackscrew there, and that the nut on the step was not moved while the engine was at Toyah on that trip. That Mr. Young was the machinist at Toyah at that time, and that this was Sunday, the 30th of November, 1892; and he (Mitchell), believing that he was competent to do so, undertook to make the repairs needed on the engine himself, and jacked the front part of the engine up for the purpose of raising the pilot, and, finding that he could not accomplish the task of raising the pilot with the force at hand, by himself, he did not do the work necessary to raise the pilot or cowcatcher. That the report of the engineer in the book at Toyah provided for that purpose, reporting that repairs were necessary on his engine, on the 29th day of November, 1892, was: "Change water. Grind in blower. Put gasket in front joint of blower pipe. Raise the pilot." That "change water" means to let the water that engine came in on out, and put fresh water in. "Grind in blower" is to arrange blower so that the smoke will pass out at the stack, instead of coming out at the cab. Witness did this, which is a very small job. "Put gasket in front joint of blower pipe" was a very light job, and was done by witness. That to "raise the pilot" required witness to jack up the engine, and put gibs under the spring ends of the engine truck. The engine truck is near the front end of the engine. Did not do this, because it was a pretty big job, and he was doing the work by himself, with only the help of two Chinamen; and that the engine was all right to run as well as if it had been done, except the pilot was a little low, but it did not interfere with the safe running of the engine.

Ninth. The engine left Toyah at the usual hour of 2 a. m. on the morning of the 1st of December, 1892, and arrived at the usual hour at El Paso, 10:30 a. m.; and plaintiff and engineer got off· the engine several times, while it was standing, on the right side, and neither of them noticed anything the matter with the step. After they arrived in El Paso, they both left the engine attached to the train at the depot, getting off the engine on this right side, using this step, and went to their homes, and neither noticed anything wrong with the step.

Tenth. A short time after the engine arrived in El Paso, the hostler, or a man whose duty it is to take it, coal it, etc., and put it in the roundhouse, took charge of it, detached it from the train, ran it into the yard, and set it on a transfer track, and left it there an hour or so; then took it to the coal cars, and left it there for the coal heavers to coal up, and it remained there an hour or more. The coal is placed in the tender, back of the engine, and piled up pretty high; and some of the pieces are a foot or 18 inches long, and 6 or 8 inches wide, and very heavy, and one of them, falling off the gangway, might strike the step. When the hostler went, later, to get the engine from the coal yards, the plaintiff was on the engine. The hostler ran the engine from where it was coaled, and was moving it to the proper position, near the sandhouse, to have the fire cleaned out. It was something near an hour from the time the hostler started to leave the coal yards before he got

to the sandhouse, as he was detained by switches being closed. The plaintiff was on the engine during this time, cleaning up and filling his cans and lubricators, as the engine was nearing the place where the fire would be cleaned out; and two firemen cleaners were on the engine also,—one of them in the gangway, and the other on the front of the engine. The engine was backing, and the fire cleaner on the engine was in the act of showing the hostler, by making a signal, where to stop the engine, and to clean out the fire. The engine at this time was moving very slowly,— not more than three or four miles an hour,—and the plaintiff had gotten off the gangway, and was standing on the steps, with his face to the engine, and his left foot on the tender, and his right foot on the step which is heretofore described as attached by a rod to the rear of the engine; and the plaintiff, desiring to get out of the way of the fire cleaners as the engine passed the sandhouse, and for the purpose of stopping there, and waiting until the fire was cleaned out, stepped off the engine, in a careful and proper manner,—that is, detaching his left hand and foot, and stepping down with his left foot, which was in the direction the engine was backing. The pressure of his right foot turned the rod to which the step was attached, in such a manner as to throw the step around, close to the rear driving wheel of the engine; and plaintiff's right foot slipped off the step, so that his right foot fell immediately under the driving wheel, and the engine continued to back. The wheel ran over a portion of his foot, and crushed it so that amputation became necessary.

Eleventh. Plaintiff knew that there were servants and employes of the defendant for the purpose of inspecting and repairing his engine, and that the opportunity given to do this was when the engine was placed in the roundhouse at El Paso, and that at the time he fell and was injured the engine was not yet placed in the roundhouse, where it would be inspected and repaired.

Twelfth. The cause of the turning of the step when plaintiff fell was on account of the nut heretofore described, on the top of the casting, not being taut, but it had become loose, leaving the rod to which the step was attached so it could be easily turned. It was the duty of the engineer who operates an engine to inspect and report all defects in repairs necessary on his engine, in a book kept for that purpose at each place, at the end of his run,—in this instance, at El Paso and at Toyah,—and on the day that the plaintiff was injured the engineer entered the following report at El Paso a few minutes after they arrived: "Pilot raising, and wash out engine" (that is, the pilot needed raising, and the engine should be washed out),— and he did not discover or report that the said step was loose, if it was loose at the time.

Thirteenth. The defendant had proper and competent inspectors to inspect and repair engines in the yards at El Paso and Toyah, in addition to the inspections made by the engineers, and that at the time plaintiff was hurt the yard inspectors and mechanics had had no opportunity, under the routine and custom as to handling, coaling, sanding, cleaning, inspecting, and repairing engines

as they arrived in the yards, to inspect or repair the engine upon which he was injured, and this plaintiff well knew.

Fourteenth. Plaintiff's business in November and December, 1892, was fireman of a locomotive engine, and he had been engaged in that business about seven years.

Fifteenth. Plaintiff did not know that said step on the engine was in a loose or defective condition at the time he stepped down on the same and was injured. That the manner in which the plaintiff got off the engine, backwards, was a careful and prudent manner, he alighted in a careful and prudent manner, in the usual manner to alight from an engine, whether in motion or standing still, and that, if said step had been in repair, there was no danger in the manner in which plaintiff alighted from the engine.

Sixteenth. Plaintiff testified that it was the custom of the firemen to go to their engines in the yard before they were put in the roundhouse, and do their work of cleaning such part of the engine as it was their duty to clean, and clean out and fill the lubricators and fill the oil cans; but, on being asked, he could not mention the name of any other fireman employed on defendant's passenger engines who did this, besides himself. He stated that his reason for doing this work on the engine at that time was that the weather was getting cool, and he had to strain his oil, and he would set his cans out in the gangway, near the engine, so that the warmth would make it easier and quicker work to handle the oil properly, whereas, if he had waited until the engine was in the roundhouse, the oil would have been somewhat chilled, and more difficult to handle, and that for some time previous he had been going on the engine and doing this work while the engine was in the yard, and before it had been placed in the roundhouse.

Seventeenth. Mr. Wheeler, who is superintendent of terminal and foreman of the shops in El Paso, for defendant, the hostler Taylor, and the machinist Rossiter, employes in the defendant's yard and shops in El Paso, testified that plaintiff was the only fireman of a passenger engine that went upon his engine in the yard in El Paso to do his work before his engine had been placed in the roundhouse, and that they had known him to do so three or four times before the accident.

Eighteenth. All the witnesses except the witness A. C. Wheeler, superintendent and foreman of defendant, testified that the nut above described, used to tighten the step, would not probably work loose, in making the trip from El Paso to Toyah and back, by the ordinary jar and running of the engine; that it might come loose by the step having struck against something. Wheeler testified that he was a competent machinist, having had experience of 20 years with engines; that the nut might work loose on said trip, but it was impossible to tell whether it would or not. Plaintiff testified that the step struck nothing in running that trip from El Paso to Toyah and return. It was proven that the nut and threads of the step rod were in good condition, and had not worked loose since the accident to plaintiff.

Nineteenth. The above and foregoing being a statement of all facts in evidence, the defendant, before the jury retired under the charge of the court, requested the court to give the jury the following instructions:

"If plaintiff was a fireman upon one of the defendant's engines pulling passenger trains over the track into El Paso, where defendant had repair shops, and competent persons to repair its engines, and plaintiff knew of this, and on the day that he was injured the engine on which he was employed as fireman arrived in El Paso apparently in good condition, and the plaintiff left said engine, and it was taken in charge by servants of the defendant whose duty it was to inspect and repair it, and he knew he would have ample time afforded him after the same was inspected and repaired to perform his duties on said engine, in cleaning the same, and have the appliances and implements pertaining to said engine in his immediate charge in proper condition for his outgoing trip on said engine, it was his duty to give servants of defendant opportunity to inspect and repair the engine and appliances before going on said engine, while it was in motion; and if he did not do this, but went on said engine knowing that the same had not yet been inspected and repaired, for the purpose of performing his duties in cleaning and putting in proper condition the lubricators, oil cans, and other apparatus which it was his duty to clean and prepare, and in doing so attempted to alight from said engine while it was in motion, when such alighting was not necessary in the performance of such duties, and the step of the engine was in such defective condition that it was unsafe for use in getting off the engine while in motion, and in so alighting he was injured by reason of such unsafe step, he would be guilty of contributory negligence, and not entitled to recover any damages from defendant, even if, in alighting, he did so in such a careful manner as a prudent man would exercise if the step were unsafe."

These special instructions the court refused, and thereupon charged the jury as follows:

"The plaintiff brings suit against the defendant to recover damages for personal injuries, claiming, briefly and in effect, that while engaged in the service of the defendant, and in the performance of his usual and ordinary duties, as fireman on passenger engine No. 90, he was seriously injured because of the negligence of defendant in failing to keep the step of the engine in suitable condition and proper repair for use by its employes. Recovery is sought by plaintiff on the ground of alleged negligence on the part of defendant, and, to entitle him to recover, such negligence must be proved as alleged. The general principles of law touching the duties of individuals and corporations in supplying machinery or mechanical appliances for their employes are thus stated by the supreme court: 'Neither individuals nor corporations are bound, as employers, to insure the absolute safety of the machinery or mechanical appliances which they provide for the use of their employes. Nor are they bound to supply the best and safest or newest of those appliances for the purpose of securing the safety of those who are thus employed. They are, however, bound to use all reasonable care and prudence for the safety of those in their service, by providing them with machinery reasonably safe and suitable for the use of the latter. If the employer or master fails in his duty of precaution and care, he is responsible for any injury which may happen through defect of machinery which was, or ought to have been, known to him, and was unknown to the employe or servant. But if the employe knew of the defect in the machinery from which the injury happened, and yet remained in the service, and continued to use the machinery, without giving any notice thereof to the employer, he must be deemed to have assumed the risk of all danger reasonably to be apprehended from such use, and is entitled to no recovery. And, further, if the employe himself has been wanting in such reasonable care and prudence as would have prevented the happening of the accident, he is guilty of contributory negligence, and the employer is thereby absolved from responsibility for the injury, although it was occasioned by the defect of the machinery, through the negligence of the employer.' Railroad

Co. v. McDade, 135 U. S. 570, 10 Sup. Ct. 1044. It is only the duty of a railroad corporation to use all reasonable care and prudence for the safety of employes, by providing them with machinery reasonably safe and suitable; but it is their further duty to use such reasonable care and prudence in seeing that the machinery furnished their employes is kept in good order and repair. It is contended by the defendant in this case that the defendant had in its employment at El Paso and Toyah competent persons to inspect and repair its engines whenever it became necessary to do so, and that in such respect the defendant performed its full duty to all persons in its employment, and that if there was any negligence in the performance of their duties by machinists or mechanics, in inspecting and repairing the engine, it was the negligence of a fellow servant, for which the defendant would not be liable. This contention on the part of defendant is not supported by the best authorities. The duty of keeping in proper repair the machinery and other appliances furnished to servants by the defendant cannot be delegated to another servant, so as to exempt the defendant itself from liability caused by the negligent omission of the servant to whom the duty was delegated. The mere fact that the defendant had in its employ a competent car inspector, mechanic, and machinist would not itself exonerate it from liability if the engine step was defective in construction, or not in proper repair, for he was a representative of the defendant, and not a fellow servant of plaintiff, in the sense contended by defendant's counsel; and if he failed to exercise due and reasonable care in reference to the inspection of the engine, including the step, and keeping the same in proper repair, then for any negligence, or want of reasonable and proper care, on his part, in that respect, from which injury resulted to plaintiff, the defendant would be liable. In this immediate connection, your attention is directed to another principle of law touching the duty of plaintiff: He was bound to exercise reasonable and ordinary care to avoid injuries to himself; and if the engine step, at the time he was hurt, was defective, and he knew—or might have known, by ordinary care and attention—its condition, and then exposed himself to danger; in other words, using the language of the supreme court, 'If he did not use his senses as men generally use theirs, to keep from harm,'—he cannot complain of the injury from which he suffered. But the principle of the law as to the duty of plaintiff under such circumstances is subject to the qualification that he was not required to inspect the engine to ascertain whether or not there were latent or hidden imperfections or defects in or about it, if there were any defects at all, which rendered its use more hazardous. That was a duty of defendant. The general principle of the law being that, 'unless the defects are such as to be obvious—open to common observation—to any one giving attention to the duties of the occasion, the employe has the right to assume that the employer has performed his duty with respect to the implements and machinery furnished. If the defendant performed its duty by using all reasonable care and prudence for the plaintiff's safety, by providing him with machinery reasonably safe and suitable for his use, and if, further, the defendant had in its employment competent inspectors and machinists, whose duty it was to inspect engine No. 90, and make thereon all necessary repairs, and if such inspectors and machinists used reasonable care and diligence in the performance of their duties, and made all such repairs as they could have discovered to be necessary by the exercise of reasonable care and diligence, then for any injuries received by the plaintiff on account of defects in the appliances which had not been observed by the inspectors and machinists the defendant would not be liable, and the plaintiff, in that event, could not recover. Bearing in mind the foregoing directions, you will inquire whether the step of the engine, at the time the plaintiff was hurt, was in good order and repair. If it was, then it would be your duty to return a verdict in favor of the defendant. If, however, the engine step (and I mean, by the use of the word 'step,' to include the rod or shaft, the nut, and the flat piece of metal attached to the lower end of the rod) was defective and unsafe, and the defendant knew of its defective and unsafe condition, or could have discovered it by the exercise of reasonable care and diligence, and the plaintiff was ignorant of the defect, and could not have ascertained it by the exercise of ordinary care and caution, and if the injuries to the plaintiff resulted from such unsafe and defective condition of the step,—that is to say, if, as claimed

by the plaintiff, the step turned when he attempted to descend from the engine, —and if, in consequence thereof, without negligence on his part, he was injured, then you will return a verdict in favor of the plaintiff for such amount of actual damages as will compensate him for the injuries he has sustained. As before stated to you, the law requires the plaintiff to take due and proper care of himself; and if, at the time of the accident, he failed to exercise that degree of care and caution which a person of ordinary prudence would have exercised under similar circumstances of the situation, and his injuries resulted from such want of care and caution, then he would not be entitled to recover; and your verdict, in that event, should be for the defendant. The question of negligence of plaintiff, on the one hand, and of defendant, its agents and servants. on the other, is a question of fact, which is submitted solely to your determination, and one which you will determine for yourselves from a consideration of all the facts and circumstances in evidence."

And to said charge of the court, given the jury, the defendant, in open court, then and there excepted, because said charge failed to instruct the jury that plaintiff would be guilty of contributory negligence in going upon and alighting from said engine, while it was in motion, until after the proper servants of the defendant had had an opportunity to repair the same after it arrived in the yards at El Paso, as in defendant's special charge above requested; and the court then and there overruled said exceptions to the charge.

The only error assigned, and relied on to reverse the judgment, is that the court erred in refusing to give the charge requested by the defendant, as shown above. The request for that charge, in effect, asked the court to direct a verdict for the defendant. The hypothesis as to the proof made in the requested charge only embraced matters of fact, about which there was no dispute, as most clearly appears by the narrative of the proof in the bill of exceptions, above set out. The reason given for this charge in the request is that the plaintiff was guilty of contributory negligence. This may not be technically correct, as contributory negligence is generally defined where a definition is attempted in adjudged cases. In Sullivan v. Mining Co., the trial judge directed a verdict for the plaintiff, giving a reason for so doing which was held to be unsound; but the judgment was affirmed because the direction was right, though technically erroneous, as expressed. 143 U. S. 431, 12 Sup. Ct. 555. In Kirby v. Estill the supreme court of Texas, in reference to a similar question presented to them, say:

"While the court may not have erred in refusing to give the several special charges, in the form they were requested, we think they were sufficient to call the attention of the court to the important matter embraced in them. On the case made by the evidence, we think the court should have instructed the jury to return a verdict for the plaintiff." 75 Tex. 484, 12 S. W. 807.

The charge to the effect that the plaintiff was "not entitled to recover any damages from defendant" may have been a proper charge to give, although the plaintiff was not shown to have been guilty of contributory negligence. Clearly, if there was no proof tending to show negligence on the part of the defendant, the jury should have been instructed that the plaintiff could not recover. In two cases decided by this court, at the present term, (Southern Pac. Co. v. Burke, 60 Fed. 704, and Railroad Co. v. Thomas, Id. 379), we

stated at some length our views as to when the question of negligence is one of law for the court. In the case of Steamship Co. v. Merchant, 133 U. S. 375, 10 Sup. Ct. 397, the supreme court reversed the judgment of the lower court because the trial judge refused to direct a verdict for the defendant when the only negligence the evidence tended to prove was that of a fellow servant. In Armour v. Hahn, 111 U. S. 313, 4 Sup. Ct. 433, the judgment of the circuit court was reversed on the ground that the demurrers to the evidence should have been sustained, as there was no evidence tending to prove any negligence on the part of the master.

In the case now before us, the only defect in the machinery, that contributed to the injury, suggested by the pleadings or by the proof, was that the step on the right-hand side of the engine, which plaintiff used in carefully alighting from the engine while in motion, backing slowly at the rate of not more than three or four miles an hour, was not tightly fastened. The step was of the customary and proper kind, in no other manner defective. It had been taken off the last time the engine was in the El Paso yards, two days before this injury. It had been put on again, and well fastened, before the engine was taken out. The plaintiff assisted Rossiter in tightening up the nut, and both Rossiter and plaintiff testify that the nut was properly screwed on at El Paso, and would not have become loose in a trip from El Paso to Toyah and return. There is direct proof that the nut on the step was not moved while the engine was at Toyah on that trip. Plaintiff testified that the step struck nothing in running that trip from El Paso to Toyah and return. It was proven that the nut and threads of the step rod were in good condition, and had not worked loose since the accident to plaintiff. The day of the accident the engine left Toyah at the usual hour (2 a. m.), and arrived at El Paso at the usual hour (10:30 a. m.); and plaintiff and the engineer got off the engine, on the right side, several times, while it was standing, and neither of them noticed anything the matter with the step. After they arrived in El Paso they both left the engine attached to the train at the depot, getting off the engine, on this right side, using this step; and neither of them noticed anything wrong with the step. There is no evidence tending to prove that up to this instant the step was not all right. On the contrary, all the evidence on that subject tends strongly to prove that up to this instant the stop was all right. It may not have been the duty of the fireman to inspect this step, which he was constantly using, on the run from El Paso to Toyah and return; but it was the duty of his engineer, and they were fellow servants. Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914. The engineer did not report or discover that the step was out of order. If in fact it was so at this instant, or previously, after the plaintiff had assisted the machinist in fixing it all right in the shop at El Paso, immediately before beginning the run to Toyah, how could the master know it, or have discovered it? The engineer was a competent, skillful, careful servant. The plaintiff had been engaged as fireman of a locomotive engine for seven years; was in the prime of life (34 years of

age); was in good health; had not missed a day's work for two or three years. It is fair to presume that he was as conversant with all the features of the engine as a competent engineer. His attention had been specially directed to this step by his assisting the machinist to fix it, before starting on the last run from El Paso. The fact that he saw a jackscrew on the ground near this step while the engine was at Toyah does not tend to prove that the step was loose at that time, or had been moved, but might have served further to call his attention to the step, as he must have known the jackscrew could not well have been used on that part of the engine without first taking off the step. And yet, though using this step several times in alighting from the engine on the run from Toyah to El Paso, and alighting from the engine by it when he left the engine at the passenger depot in El Paso, he did not discover any defect in it. The engine was to wait at El Paso 28 hours before being called to go out on its next regular run. The fireman was not to be called for duty after coming in on one run until called to go out on the next run. The fireman had certain work to do about the engine before it started on its next trip. There was no specified time within the 28 hours in which this work should be done. He went home. The engine was taken charge of by the hostler, with assistants; detached from the train; run into the yard; set on a transfer track; left there an hour or so; then taken to the coal cars, where it remained an hour or more. Here, the plaintiff mounted the engine again, and was engaged in doing his proper work, preparing it for its next run. After coaling it, the hostler ran the engine from where it was coaled, and was moving it to its proper position, near the sandhouse, to have the fire cleaned out. It was nearly an hour from the time the hostler started to leave the coal yards till he got to this point near the sandhouse, as he was detained by switches being closed. During this time the plaintiff was engaged at his appropriate work, and had nearly completed it as the engine was nearing the place where the fire would be cleaned out. Before the engine came to a standstill, while it was moving slowly,—at a rate of not more than three or four miles an hour,—the plaintiff, in a careful manner, alighted from it, to make more room for firemen who were on it, to clean out the fire. At this instant the step proved to be loose. On that account the plaintiff lost his footing, the engine, backing, passed over his foot, and he was painfully hurt and permanently disabled. If this did not result, proximately, partly from his unnecessarily leaving the engine while in motion, did it not result from the natural hazards of his employment? By what reasonable or practicable degree of care, beyond the care that was used, could the defendant have guarded against this accident? It seems to us that to state the case is sufficient to show that the defendant had not been negligent, and could not justly be held liable. The exception to the charge of the court and to the refusal of the requested charge having served to bring up in the bill of exceptions a full statement of all the evidence given on the trial, it appears from the face of the record that there was no evidence to sustain the judgment of the circuit court. It is thus manifestly erroneous, and must

be reversed. We therefore order that the judgment of the circuit court is reversed, and the case remanded for further proceedings in conformity with this opinion.

TOULMIN, District Judge (dissenting). I am unable to concur in the opinion and judgment of the court in this case, and will state, as briefly as I can, the grounds of my dissent:

The assignments of error presented by the record are that:

"First. The trial court erred in refusing to give the jury defendant's special instructions as follows, to wit: 'If plaintiff was a fireman upon one of defendant's engines, engaged in pulling passenger trains over the track into El Paso, where the defendant had repair shops, and competent persons to repair its engines, and plaintiff knew this, and on that day that he was injured the engine on which he was employed as fireman arrived in El Paso in apparently good condition, and plaintiff left said engine, and it was taken charge by servants of the defendant, whose duty it was to inspect and repair it, and he knew he would have ample opportunity afforded him, after the same was inspected and repaired, to perform his duties upon said engine, in his cleaning the same, and having the appliances and implements pertaining to said engine in his immediate charge, in proper condition for his outgoing trip on said engine, it was his duty to give servants of the defendant opportunity to inspect and repair the engine and appliances before going on said engine while it was in motion; and if he did not do this, but went on the engine, knowing the same had not yet been inspected and repaired, for the purpose of performing his duties in cleaning and putting in proper condition the lubricators, oil cans, and other apparatus which it was his duty to clean and prepare, and in doing so attempted to alight from said engine while it was in motion, when such alighting was not necessary in the performance of such duties, and the step of the engine was in such defective condition that it was unsafe for use in getting off of the engine while in motion, and in so alighting he was injured by reason of unsafe step, he would be guilty of contributory negligence, and not entitled to recover any damages from defendant, even if, in alighting, he did so in such a manner as a prudent man would exercise if the step was safe."

And, second:

"The trial court erred in not granting defendant's motion for a new trial, and setting aside the verdict and granting a new trial, as, under the evidence, the verdict of the jury is greatly excessive."

As to the second assignment of errors, suffice it to say that it is not permitted for this court, sitting as a court of errors, in a case wherein damages have been fixed by the verdict of a jury, to take notice of an assignment of this character. Railroad Co. v. Fraloff, 100 U. S. 31; City of Lincoln v. Power, 14 Sup. Ct. 387, 151 U. S. 436. And in Holder v. U. S., 14 Sup. Ct. 10, the supreme court said, "It has also been settled by a long line of decisions of this court that the denial of a motion for a new trial cannot be assigned for error." The only assignment of error, then, presented for our consideration, and the only error urged or discussed by counsel for plaintiff in error, was the refusal of the trial court to give the charge hereinabove set out. The request for that charge was, in effect, asking the court to direct a verdict for the defendant on the ground that the plaintiff was guilty of contributory negligence. The evidence in reference to which this charge was requested, and on which it must have been based, is found

fully set out in the 5th, 10th, 15th, and 16th paragraphs of the opinion of the court.[1]  In view of this evidence, it cannot be seriously contended that the facts recited in the charge constitute, as a matter of law, contributory negligence on the part of the defendant in error (the plaintiff below).  It certainly cannot be said that this evidence would warrant no other conclusion than that he was guilty of negligence which contributed directly to his injury; and it cannot be fairly claimed that no uncertainty as to the existence of contributory negligence arises from this evidence, and that all fair-minded men would honestly draw the same conclusion from it.  If it cannot, then the question of contributory negligence was one of fact, and should have been submitted to the jury, as was done by the trial court.  In Dunlap v. Railroad Co., 130 U. S. 652, 9 Sup. Ct. 647, the supreme court held that it was error not to submit the question of contributory negligence to the jury, when the conclusion did not follow, as a matter of law, that no recovery could be had, upon any view which could be properly taken of the evidence tending to establish such negligence.  And in Railroad Co. v. Powers, 149 U. S. 44, 13 Sup. Ct. 748, the supreme court said that where there was uncertainty as to the existence of contributory negligence the question is not one of law, but of fact, to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them.  Gardner v. Railroad Co., 14 Sup. Ct. 140, and authorities therein cited.  The court, in its opinion, says that "the only error assigned and relied on to reverse the judgment is that the court erred in refusing to give the charge requested by the defendant, as shown above."  I do not understand the court to hold that such refusal was error.  It intimates that it was not error.  But the court finds that the defendant had not been negligent, and could not justly be held liable, and says that, as the bill of exceptions presents a full statement of all the evidence given on trial, it appears therefrom that there was no evidence to sustain the judgment, and it must therefore be reversed.  If by this statement the court means to say that the verdict of the jury was not warranted by the evidence, the answer is that the rule is well established that this court, sitting as a court of error, has no authority to set aside the verdict of the jury, even if it does not appear to be justified by the evidence.  Railroad Co. v. Fraloff, supra; City of Lincoln v. Power, supra; Shauer v. Alterton, 14 Sup. Ct. 442.  If, however, the meaning is that the trial court should have instructed the jury to find for the defendant, then the answer is that the court was not requested to give such instruction.  If the defendant wished to test, by writ of error in this court, the sufficiency of the evidence to sustain a verdict for the plaintiff, it should have requested the trial court, at the close of the evidence, to peremptorily instruct the jury to return a verdict for it.  Insurance Co. v. Unsell, 144 U. S. 439, 12 Sup. Ct. 671; Village of Alexandria v. Stabler, 1 C. C. A. 616,

[1] See ante, pages 260, 262–264.

50 Fed. 689. It did not do this, and the sufficiency of the evidence cannot be considered here. "In an action at law, brought here by writ of error for review, this is a court for the correction of the errors of the court below, solely. It is not a court for the correction of the mistakes of the jury, or for the retrial of issues of fact which they have determined with the consent of the litigants. In order to obtain a review of any question by writ of error in this court, it must appear that the court below decided that very question, for there can be no review of that which has never been passed upon." "The court below was not requested to decide, and did not determine, whether or not there was sufficient evidence to warrant a verdict before it was rendered; and hence it could not have committed any error in this regard, and there is nothing here for us to consider." City of Lincoln v. Sun Vapor Street-Light Co., 8 C. C. A. 253, 59 Fed. 761; Insurance Co. v. Unsell, supra. In the case last cited it was held that "if, in a case where the evidence warranted a request for a peremptory instruction to find for the defendant, no request for such instruction was made, it cannot be made a ground of reversal that the issues of fact were submitted to the jury." In the opinion the court said: "The defendant assumed that it [the case] would be submitted to the jury, and asked instructions touching the several points on which it relied. It did not ask a peremptory instruction for a verdict in its behalf. It cannot, therefore, be a ground of reversal that the issues of fact were submitted to the jury." So with the case here. The defendant assumed that the case would be submitted to the jury, and asked instructions touching the point—plaintiff's contributory negligence—on which it seemed to rely. It did not ask a peremptory instruction for a verdict in its behalf. It cannot, therefore, be a ground of reversal that the issues of fact were submitted to the jury. If there was no error in the refusal of the court to give the special instruction, on the point of contributory negligence, asked by the defendant, there is, in my opinion, no ground of reversal presented on the record. In the general charge of the court the jury were fully and properly instructed in respect to every aspect of the case. The defendant seems to have been satisfied with the charge given. It took no exception to it, and does not complain here of it. This court falls into an error when, in its opinion, it speaks of the exception to the charge of the court. The record shows no exception to the charge given, but the exception was to the omission of the court to charge that the plaintiff was guilty of contributory negligence. If the exception was to the omission of the court to give the peremptory charge in favor of the defendant, no error could be assigned on it. The rule is that it is not error for the court to omit to charge the jury on a particular point, or in a particular way, unless asked to do so at the trial. A party cannot, in a court of error, avail himself of an omission which he made no effort to have supplied at the time. The not giving an instruction may be excepted to, if it was requested, but not otherwise. This has been the rule in the federal courts since the early case of Smith v. Carrington, 4 Cranch, 62, down to the case of Railway Co. v. Volk (decided Jan. 3, 1894) 14 Sup. Ct. 239. "A

request for instructions, being necessary to entitle the excepting party to avail himself of an omission to instruct, cannot be presumed, but must affirmatively appear in the bill of exceptions." Railway Co. v. Volk, supra, and authorities; Mayer v. Duke, 72 Tex. 445, 10 S. W. 565; Odom v. Woodward (Tex. Sup.) 11 S. W. 925. The only exception shown by the record, and on which error is assigned, is the refusal of the court to give the special charge requested by the defendant, to the effect that the plaintiff was guilty of contributory negligence, and therefore could not recover. There was no error in refusal. For the reasons stated, I dissent.