## TEXAS & P. RY. CO. v. WHITE.

(Circuit Court of Appeals, Fifth Circuit. May 1, 1900.)

### No. 891.

**1. RAILROADS—NEGLIGENCE—PERSONAL INJURY—EVIDENCE— DIRECTING VER
DICT.**
Plaintiff testified that, upon being advised by the conductor that de-
fendant's freight train would remain on the side track 40 or 50 minutes,
he entered one of the cars to look after his cattle, and that while in there
the car was suddenly moved a few feet, and as suddenly stopped, without
warning, throwing the weight of half the cattle in the car against him,
and pushing him against a trough, whereby he received a serious injury
in his abdomen. ·Plaintiff did not mention the fact of his having been
hurt to any of the servants of defendant, though he proceeded with his
car of cattle to its destination, where he and an employé drove the cattle
to a ranch 37 miles distant. A witness who saw plaintiff before he went
into the cattle car and immediately after he came out testified that he
saw a difference in plaintiff after he came out, and that he had a bruised
place on his side. The conductor, brakeman, and engineer of the train
testified that the car which plaintiff entered was not moved while he was
in it. *Held*, in an action for damages, that the court properly refused
to direct a verdict for defendant.

**2. SAME—DAMAGES.**
There being evidence tending to show an injury to plaintiff's spine, it
was not error to refuse to instruct the jury that, if they found for plain-
tiff, they should not estimate anything for such injury.

**3. SAME—CONTRIBUTORY NEGLIGENCE—INSTRUCTION TO JURY.**
Defendant's request for an instruction that plaintiff could not recover
if his own negligence contributed to his injuries being fully embraced in
the charge of the court, the refusal to further instruct the jury on such
point was not error.

**4. SAME—AGGRAVATION OF INJURY—DAMAGES—INSTRUCTIONS TO JURY.**
After plaintiff received the injury complained of, he continued his jour-
ney to the point where the cattle were to be discharged, drove them 37
miles across the country to his ranch, where he remained for a few days,
and then returned to his home, traveling part of the distance afoot, and
part by stagecoach. Although suffering severe pain most of the time,

he did not consult a physician until after his return home, and there was evidence that a part of the troubles resulting from plaintiff's injury could have been speedily cured at small · expense, and without hazard, by prompt surgical treatment. *Held,* that the court should have instructed the jury, as requested by defendant, that plaintiff could not recover for pain or suffering, either physical or mental, which he may have sustained by reason of his failure to use ordinary care in having himself treated or operated upon by physicians.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

T. J. Freeman and W. T. Armistead, for plaintiff in error.

J. F. Jones, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. G. R. L. White, the defendant in error, brought his action against the Texas & Pacific Railway Company, the plaintiff in error, claiming damages for an injury alleged to have been received by him, while a passenger on the railway company's railroad, through the negligence of its servants. He had shipped a car of cattle by this railroad from Jefferson to Abilene, in Texas, and was traveling by contract on a drover's pass for the purpose of caring for the cattle on the way. They arrived at Dallas on the morning of November 25, 1897. At the time of arrival the plaintiff was in the caboose asleep. He was awakened by the conductor of the train, and told that his car of cattle needed his attention, and to get up and look after them, which he proceeded to do. He alleged and testified that in a few minutes after he was awakened he left the caboose, and going towards the car which contained his cattle he met the conductor, and asked him how long the train would remain standing on the side track, and was told that it would remain 40 or 50 minutes. He then proceeded to his car, and by the use of a prod pole got up all the cattle that were down, except one in the middle of the car, which he could not get up with such help as he could render from the outside of the car. He therefore entered the car to open the press of the standing cattle, so that he could relieve the one that was down; and as he was about to do this the car was suddenly moved a few feet, and as suddenly stopped, without any warning to him, throwing the weight of half of the cattle in the car against him, and pushing him against a trough; whereby he received a serious injury in his abdomen, resulting in causing him great pain, and in producing a serious and painful disease of his bowels, and sharp, severe, and continuing pain in his spine or back, and in producing varicocele. He gives detail of symptoms and suffering unnecessary to recite. The defendant answered by a general demurrer and a general denial. The conductor, the engineer, and the brakeman on the train all testified that the car did not move during the time that the plaintiff was in it. It was shown without dispute that the plaintiff did not at any time mention the fact of his having been hurt to any of the servants of the company; that he proceeded with his car of cattle, riding on the top of that car, from Dallas to Ft. Worth. There the cattle were unloaded, and after a few hours re-

loaded, during which time he was with the servants of the company, and did not mention having received any injury; that he then proceeded on the train, carrying the cattle from Ft. Worth to Abilene, where the same were discharged, and he and an employé of his took charge of them, and drove them to his ranch in Jones county, a distance of 37 miles from Abilene, the plaintiff traveling on foot; that he remained at his ranch several days, and then walked to Anson, and from there traveled by stage to Abilene, where he took the train, and proceeded to Winnsboro, where his family then were. During this journeying, which consumed about 10 days, he made no complaint to any of the servants of the company of having received any injury on the company's car. He testified that he would not have gone into the car had not the conductor told him that the car was going to stand there; that after he was hurt he went to the caboose, and laid down half an hour, and then went and got on the car which had his cattle in it a few minutes before the train left Dallas; that a man named Carpenter, who had some cattle on the same train, went to the caboose with him; that he told Carpenter that he was hurt and suffering, and opened his clothes to see if the skin was broken anywhere. Carpenter testified that he saw the plaintiff before he went into the cattle car, and also saw him immediately after he came out, and saw a difference in him after he came out; that the plaintiff had a bruised place on his side, and said he thought he was badly hurt. He showed Carpenter the bruised place. The plaintiff testified that the reason he did not tell the railroad people about his being hurt at the time was that there was not a railroad man about the caboose when he got back to it. There was no brakeman where he was on the train. He left the caboose, and went to his car, before they got ready to leave. The railroad men were with the train when it got to Ft. Worth, and there were railroad men in the engine all the way. When the train stopped at Ft. Worth he could have told them about it, but did not do it that he remembers, and he does not know what they could have done for him if he had told them; that he was among strangers there at Ft. Worth. He also testified that he suffered much in going from Abilene to his ranch; that immediately after receiving the hurt—that is, as soon as he recovered and got his balance—he left the car because he was scared; that he did not think then that he was seriously hurt; that, though it pained him considerably, he supposed he would get over it, and the reason he did not have a physician until he got back to Winnsboro was because he had hopes of wearing it out, and that it would pass off; that he wanted to get back to his home, where he could get his family physician; that at Anson, on the way back to Abilene, he suffered so much that those who were with him advised him to get a doctor, but he told them that he was going to try to go home if possible. He testified that there had been no cessation in the pain since he was injured; that he did not call for a doctor as he went through Winnsboro on his way home, nor send for a doctor while he was at home, but, as the suffering continued, he went to see the doctor a few days after he reached his home, and about 10 days after receiving the hurt; that on his way home he suffered so much, and his symptoms were

so violent, that at Greenville persons who were with him brought a physician to see him, but that he (the plaintiff) hardly remembers this physician being with him. He testified that he was positive that he did need a doctor on the trip; that there were doctors all along through that country, but that he had hopes that he was not hurt seriously, and was willing to endure the pain rather than be out the money that the doctor would charge him, and that he thought he could get along without one; that he did not get any medicine at that time to relieve the pain, because he did not know what to get; that those who were with him gave him medicine at Anson to relieve his pain, and wanted him to get a doctor, but that he determined to try to worry through without one. Many witnesses testified on the trial. There was sharp conflict in the testimony as to the moving of the cattle car while the plaintiff was in it, and as to whether he received any injury, and, if so, as to the nature and extent of it. There was a verdict and judgment for the plaintiff in the sum of $9,000.

The plaintiff in error assigns as error:

"(1) The court erred in refusing special charge No. 1 asked by the defendant, as follows: 'Upon the law and the facts in this case, you are instructed to return a verdict for the defendant.' (2) The court erred in refusing to give special charge No. 2 asked by the defendant, as follows: 'The plaintiff does not prove any injury to his spine, and if you should find for the plaintiff under the instructions you will not estimate anything for injury to the plaintiff's spine.' (3) The court erred in refusing to give special charge No. 4 asked by the defendant, as follows: 'If you find that the present condition of the plaintiff could have been averted by proper medical treatment, and the plaintiff failed to use ordinary care in having himself treated, he cannot recover for the pain or suffering, mental or physical, which he has suffered, if any, by reason of his neglect in failing to have himself treated or operated upon by physicians.' (4) The court erred in refusing to give special charge No. 5 asked by the defendant, as follows: 'If you believe from the evidence that the plaintiff was injured as alleged by the defendant company, and that his said injuries were caused by his own negligence, or that his negligence contributed to his said injury, you will find for the defendant."

The first error assigned is clearly not well taken, because there is evidence tending to support the plaintiff's case. For a similar reason, the second error assigned is not well taken; for there is evidence tending to show that the plaintiff's spine, or his back, was affected by the injury. The fourth error assigned is not well taken, because it is fully embraced in the charge given by the court. The third assignment of error presents matter on account of which we think the judgment must be reversed. The defendant in error believed that the exigency of his business required him to continue the journey with his cattle, and to continue his care of them until they reached the ranch, and it is not unnatural or unreasonable that he should hesitate to employ physicians who were strangers to him while he could endure the suffering he experienced until he could reach home, to have the advice and attention of his family physician. While these reasons for his action commend themselves to our experience and sympathy, yet if therefrom an aggravation of his injury resulted, from his active attention to his business, or from his failure to obtain the advice and aid of competent physi-

cians who were accessible, such aggravation, whether it resulted from his positive active exertion, or from his neglect or failure to obtain the needed medical or surgical assistance, cannot, in justice, be charged against the defendant railway company in addition to its liability for the original injury to the extent of the damage it necessarily caused. The subject of the aggravation of damages by reason of his continuing his journey under the conditions shown by the proof is amply covered by the charge of the court. It was, however, as incumbent on the plaintiff to procure the advice of a competent physician and surgeon, if accessible, as it was to refrain from such physical exertion as tended to aggravate his injury. We consider that the requested charge No. 4 is sound in substance, and, while it is not exhaustive, it was error in the court to refuse it without giving an appropriate instruction on the subject to which it relates. Railway Co. v. Patton, 23 U. S. App. 333, 9 C. C. A. 487, 61 Fed. 259; Kirby v. Estill, 75 Tex. 484, 12 S. W. 807. There was proof tending to show that a part of the trouble of which the plaintiff below complained could have been speedily cured, at a small expense and without hazard, by prompt proper surgical treatment. As to the existence, nature, extent, and likelihood of relieving the other troubles of which the plaintiff complained, the evidence is vague, conflicting, and difficult to weigh. It is competent evidence, however, and it is the province of the jury, difficult as it may be, to weigh all competent evidence, and determine issues of fact to which it relates. The difficulties presented by this character of proof furnish the strongest reason for invoking the aid of a jury in civil actions. It is no more difficult to determine whether or not the plaintiff's injuries were aggravated by his failure to procure competent medical and surgical advice and aid, and, if so, to what extent, than it is to determine to what extent, if any, his injuries were aggravated by his pursuing his journey, taking his cattle to their destination, and returning home in the manner shown by the evidence. No witness has testified, or probably can testify, either as to the fact or to the extent of the aggravation of the injury, if any, which may have been caused by the subsequent conduct of the plaintiff, either in the matter of his continuing severe physical exertions, or in the matter of his failure to employ competent medical or surgical advice and assistance. Direct testimony on this subject can hardly be had. From the nature of the case, opinion testimony must be relied on, and in considering opinion or expert testimony the opinion of the jury is the chief factor in reaching ultimate conclusions. The conditions may or may not have required a surgical operation. Prompt and skillful treatment of the bruised locality might or might not have prevented or arrested the bowel trouble complained of, or the affection of the spine or back, but the subject should have been submitted to the jury for their consideration on the proof offered. On another trial the court may amplify the charge presented in the fourth request, which we hold it was error on the former trial to refuse without giving an appropriate charge on the subject. The learned trial judge recognized the settled doctrine that it was the plaintiff's duty to use reasonable care not to aggravate,

or suffer to be aggravated, so far as he could prevent it; the injury which he had received. The application of this doctrine to the subject of the plaintiff's failure to promptly obtain professional medical and surgical assistance is not very clearly shown by the adjudged cases or text writers, so far as we have been able to examine. The plaintiff in error has referred us to only one case (Secord v. Railway Co. [C. C.] 18 Fed. 221), which is the report of a trial in the circuit court. Mr. Beach, in his work on Contributory Negligence (sections 69–71), and the notes thereto, refers to cases more or less analogous to the instant case (Car Co. v. Bluhm, 109 Ill. 20; Chase v. Railroad Co., 24 Barb. 273; Sherman v. Iron Co., 2 Allen, 524; and others), some of which we have carefully examined. The judgment of the circuit court is reversed, and the cause is remanded to that court, with direction to award the defendant therein a new trial.