## OKLAHOMA PORTLAND CEMENT CO v. SHEPHERD.

No. 3678.    Opinion Filed December 22, 1914.

Rehearing Denied April 27, 1915.

(147 Pac. 1031.)

1.  **MASTER AND SERVANT—Safe Appliances—Duty of Master.**
    The general rule that the master owes to his servant the duty to keep an appliance used by the latter in order, and that he cannot delegate the duty so as to escape responsibility, does not apply to defects arising in its daily use, which are not of a permanent nature and do not require the help of skilled mechanics to repair, but which may easily be, and are usually, remedied by the workmen, and to repair which proper and suitable materials are furnished.

2.    **SAME—Injury to Servant—Negligence of Fellow Servant.** In a suit in damages for personal injuries, where the evidence disclosed that plaintiff was an employee in the packing department of defendant's cement plant, that the employees in the sacking department were charged with the duty of repairing the sacks used, in the packing department, and were furnished suitable material for that purpose, and where it was the duty of plaintiff to tie the sack in question after it had been filled at a chute and passed to him by another employee, and where in so doing, owing to the failure of the employees in the sacking department to repair two holes near the top of the sack, two jets of hot cement escaped therefrom, owing to plaintiff's weight upon the sack. and struck him in the eyes and injured him, **held,** that plaintiff and the employees charged with the duty of repairing the sack were fellow servants, and that a demurrer to the evidence should have been sustained.

(Syllabus by the Court.)

*Error from District Court, Pontotoc County;*
*Tom D. McKeown, Judge.*

Action by C. W. Shepherd against the Oklahoma Portland Cement Company. Judgment for plaintiff, and defendant brings error. Reversed.

*Currie & Duncan* and *Blanton & Andrews,* for plaintiff in error.

*Conway O. Barton, R. C. Roland,* and *Wolfe, Maxey, Wood & Haven,* for defendant in error.

TURNER, J. On December 7, 1909, C. W. Shepherd, defendant in error, in the district court of Pontotoc county, sued the Oklahoma Portland Cement Company in damages for personal injuries. After alleging the corporate existence of defendant, and that at the time of the injury complained of it was engaged in the manufacture of cement at Ada; that on August 5, 1909, plaintiff was in its employ as a packer in its packing department, which was a part of its cement plant at that place— the petition substantially states that while so employed it was his duty to receive from a fellow servant sacks of cement, which he had filled from a spout in that department, and to tie and truck them into a car; that the sacks so used were inspected and repaired in another

part of the plant called the sacking department, and were delivered empty by the sacking crew to the packing crew with which he worked; that on said date while so engaged, and while he was in the act of pressing down, in the usual way, upon the cement in a sack so filled, preparatory to tying and removing the same, jets of hot cement shot from two holes in the sack he was using, one of which struck him in the eyes and injured him. He charged that defendant, by the exercise of ordinary care, could have known of the existence of the holes; that his injury was the result of defendant's negligence in failing to inspect and in delivering to the packing crew for use said sack in that unsafe condition; that he was unaware of the holes, and could not have ascertained their existence by the use of ordinary care, wherefore he prayed damages, etc. After demurrer to the petition was filed and overruled, defendant answered, in effect, a general denial. Defendant also pleaded assumption of risk, and that the negligence, if any, complained of was that of a fellow servant. There was trial to a jury, and judgment for plaintiff for $1,100, and defendant brings the case here.

Assuming the sufficiency of the petition, as the evidence discloses the injury to have resulted from the negligence of a fellow servant, the demurrer thereto should have been sustained. There is no dispute as to the facts. The evidence discloses that on the day of the injury, defendant was engaged in making portland cement from rock, that its manufacturing department was situate on one side of two railroad tracks and, when made, the cement was conveyed across the tracks to defendant's storeroom and thence to its packing department, of which one Holeman was foreman, where it was placed in sacks furnished from its sacking department, of which Emry was foreman, and that these last two departments connecte..

by an open door. The evidence further discloses that one Curtis was general foreman in charge of the entire plant, and received his orders from one Rodarnel, who received his orders from one Whitaker, defendant's superintendent. It was the custom of defendant to purchase a large number of these sacks and fill them, and, after selling the cement, the customer would return the sacks. They were then all placed in the sack department, where a crew of hands assorted them and placed those without holes in one pile, those with small holes in another, and those with large holes in a third. They were then turned and beat, and those with small holes were patched by using portions of the worthless sacks and a quantity of glue. The sacks were then placed at a point where they could be had by the packers. The defendant always had on hand plenty of sacks, and no complaint was ever made that defendant did not furnish a sufficient quantity of glue and material to make the necessary repairs. The evidence further discloses that when the cement is first made it is run into the storeroom and thence conveyed into the packing room and, when not permitted to lay in the storeroom for several days before sacking, contains considerable mechanical heat, and is fine and dusty. Such was its condition at the time of the injury complained of. After passing from the storeroom into the packing room the cement is there automatically weighed through a chute from which it is dumped into a sack held at the mouth of the chute. At each of these chutes worked a crew of three men. The duty of one was to fill the sacks from the chute and pass them to another crew to be tied. At the time of the injury plaintiff, as one of such crew, received a sack filled with hot cement and, after shaking it down, prepared to tie it by folding the sack at the mouth and placing his weight upon it. In doing so jets of hot cement shot from two holes near the mouth of the sack, one of which struck him in the eyes and injured

him. Neither the allegation nor the proof discloses that it required any particular skill to repair the sacks, or that defendant was negligent in selecting competent help so to do. The case was won on the theory that defendant was chargeable with the act of the sack repairers in furnishing for plaintiff's use this sack in its defective condition because, it was urged, the same was an appliance and, being such, it was the duty of the defendant to use reasonable care in maintaining it in proper repair; that such duty, being nondelegable, made of the sacking crew, to whom such duty was intrusted by defendant, vice principals for whose negligence in failing so to do the defendant is liable. Such was the view of the court. The court erred. The sacking crew, to whom the duty of inspecting and reparing the sack was intrusted, were fellow servants of the plaintiff.

In 1 Bailey's Personal Injuries (1st Ed.), after declaring the general rule to be that the master owes to his servants the personal duty to exercise reasonable care to keep and maintain appliances furnished for their use in proper repair and that, if such duties are negligently performed and thereby the servant is injured, the master is liable even though he may have intrusted the performance of such duty to subordinates, the learned author, in section 259, states:

"The general rule does not apply to defects arising in the daily use of an appliance, which are not of a permanent character and do not require the help of skillful mechanics to repair, but which may easily be and usually are repaired by the workmen, and to repair which proper and suitable materials are supplied."

In support of this exception he cites, among others, the cases of *Cregan, Adm'r, v. Marston et al.,* 126 N. Y. 568, 27 N. E. 952, 22 Am. St. Rep. 854; *Miller v. C. & G. T. R. Co.,* 90 Mich. 230, 51 N. W. 370; *Texas & P. R. Co.*

*v. Patton*, 61 Fed. 259, 9 C. C. A. 487; *Webber v. Piper et al.*, 109 N. Y. 496, 17 N. E. 216.

In *Cregan, Adm'r, v. Marston et al., supra*, the facts were that plaintiff's intestate was an employee of defendant and was killed by being struck by a bucket which fell owing to the breaking of a rope, called a "fall," attached to a derrick and used in hoisting buckets of coal from the hold of a vessel. In a suit to recover damages for personal injuries causing his death, the evidence disclosed that defendant kept on hand an adequate supply of "falls" of the most approved kind; that the defective "fall" was in full view of the employees, and that its apperance would indicate from time to time whether prudence required it to be changed; that application for these "falls" was usually made by the engineer or his assistant, but any employee was at liberty to call for a new one; that a day or two before the accident the "fall" in question was examined by the engineer and deemed safe. On this state of facts the court charged the jury that it was the duty of the master to watch the rope used by its servants and note its changes of condition, that the engineer was his agent for such purpose, and that the negligence of the engineer, in case he failed so to do, was that of the master. On appeal the Supreme Court held such charge to be error and, in effect, that the engineer was a fellow servant of the deceased, and reversed the case. In the syllabus it is said:

"The general rule that a master owes to his servant the duty to keep a machine or appliance used by the latter in order, and that he cannot delegate the duty so as to escape responsibility, does not apply to defects, arising in its daily use, which are not of a permanent character and do not require the help of skilled mechanics to repair, but which may easily be and are usually remedied by the workmen, and to repair which, proper and suitable materials are supplied."

*Miller v. C. & G. T. R. Co., supra,* was a suit in damages for personal injury. There a brakeman was injured by reason of the engine step being loose and out of repair and upon which he stepped in attempting to mount the engine when moving. It was, in effect, the holding of the court that, although it may not have been the duty of the brakeman to inspect and repair the step which he was constantly using, but was the duty of the engineer, yet they were fellow servants, and plaintiff could not recover for the negligence of the engineer in failing to fix it.

In *Johnson v. Boston Tow Boat Co.,* 135 Mass. 209, 46 Am. Rep. 458, the injuries of the deceased were sustained by the breaking of a "fall," substantially as in the Cregan Case, *supra.* In that case one Moore was the foreman, whose duty it was to superintend the labor of the men and the use and condition of the steam derrick in question. In stating the respective contentions the court said:

"It is not disputed that, in superintending the labor of the men and the use of the apparatus, * * *, he was a fellow servant with the plaintiff, but it is contended that, in his supervision of the condition of the appliances, he was acting, not as a servant, but as a deputy master."

But the court held not so, and in the syllabus said:

"A corporation owning a lighter is bound to use reasonable care in maintaining in suitable condition the appliances used on board the lighter by its servants in hoisting and lowering merchandise; but if it furnishes such appliances, and employs a competent servant to see that they are kept in proper condition, it is not liable for an injury occasioned to one servant by the parting of a rope, in consequence of it being used for too long a time, and after its defective condition was known to the servant whose duty it was to replace it."

In *Grams v. Reiss Coal Co.,* 125 Wis. 1, 102 N. W. 586, deceased was in defendant's employ as a shoveler en-

gaged in filling buckets with coal, which were conveyed for loading on cars by means of a derrick operated by other employees of the defendant.  The buckets when filled were raised by a cable over a wheel at the end of a boom, and were swung to the place where dumped.  After one of the buckets was raised, but before it was dumped, it fell, owing to a parting of the cable, and deceased was struck by it and killed.  The contention was there, as here, that the machinery was out of repair, which the defendant should have known and repaired it; that the employees operating the derrick, and who were instructed and directed to make the repairs, rendered necessary by its daily use, with material that defendant had furnished sufficient and proper to make the repairs, were vice principals for whose negligence in failing so to do defendant was liable. But the court held not so, and drew the distinction indicated as drawn in the syllabus of the case.  There it is said:

"A person making incidental repairs and readjustments of appliances is doing servant's duty for his master, and is a fellow servant to all employed in the common service, while those who make repairs and readjustments which are unusual in their nature and permanent in their character, or such as require a skilled mechanic, are acting in the master's place or as vice principals to those employed with them in their master's business."

In *Webber v. Piper et al.*, 109 N. Y. 496, 17 N. E. 216, plaintiff was injured while using a circular saw while an employee in defendant's factory.  The injury was caused by the dullness of the saw.  The evidence disclosed that in the prosecution of the work the defendant furnished saws so that when one was needed to be sharpened it could be replaced by another.  It was the duty of another servant to make the change and sharpen and reset the saws when necessary.  On the morning of the injury plaintiff notified the other servant that the saw plaintiff

was using was dull, and that he needed another. The servant replied that he had not time to sharpen the saw, and ordered plaintiff to go on with the work. He did so, and was injured. On this state of facts it was held on appeal that the plaintiff was properly nonsuited, as no negligence on defendant's part was shown, that defendant's duty was performed when suitable saws and proper appliances for sharpening them were furnished, and that the negligence complained of, if any, was that of a fellow servant.

In *Kimmer, Adm'r, v. Webber*, 151 N. Y. 417, 45 N. E. 860, 56 Am. St. Rep. 630, the court again applied this doctrine and said:

"The master is not respsonsible for the negligent performance of some detail of the work intrusted to the servant, whatever may have been the grade of the servant who executed such detail. If it is the work of the servant, and he volunteers to perform it, and the master is not at fault in furnishing proper materials, there is no breach of duty on the part of the latter. *Cullen v. Norton*, 126 N. Y. 1 [26 N. E. 905]; *Hankins v. N. Y., L. E. & W. R. Co.*, 142 N. Y. 416 [37 N. E. 466, 25 L. R. A. 396, 40 Am. St. Rep. 616]."

In *McGee v. Boston Cordage Co.*, 139 Mass. 445, 1 N. E. 745, in the syllabus, it is said:

"A person employed to make such ordinary repairs of a machine as its use requires to keep it in order from day to day is a fellow servant with those employed to run the machine; and, if the master employs competent servants to make such repairs, and supplies them with suitable means, he has performed his duty to those employed in running the machine."

See, also, *Garragan v. Fall River Iron Co.*, 158 Mass. 586, 33 N. E. 652; *Helling v. Schindler*, 145 Cal. 303, 78 Pac. 710; *Texas & P. Ry. Co. v. Patton*, 61 Fed. 259, 9 C. C. A. 487; *Whittaker v. Bent*, 167 Mass. 588, 46 N. E.

121; *South Baltimore Car Works v. Schaefer*, 96 Md. 88, 53 Atl. 665, 94 Am. St. Rep. 560; *Marsh v. Chickering*, 101 N. Y. 396, 5 N. E. 56; *Quigley v. Levering*, 167 N. Y. 58, 60 N. E. 276, 54 L. R. A. 62.

We are, therefore, of opinion that defendant lived up to the full measure of its duty when it furnished plaintiff with proper fellow servants and placed in their hands suitable material with which to mend the sacks, used in the business, and charged them with the duty so to do. We are also of opinion that those charged with that duty were not vice principals, but fellow servants, for whose negligence, if any, in overlooking the holes in the sack and in failing to repair them defendant is not liable. The cause is accordingly reversed.

All the Justices concur, except KANE, C. J., absent and not participating.