PATTON v. TEXAS & P. RY. CO.

(Circuit Court of Appeals, Fifth Circuit. March 21, 1899.)

No. 724.

1. SECOND APPEAL—LAW OF CASE.

Where a judgment is reversed, and the case remanded, the opinion of the court on the former writ of error is the law of the case, and controlling on second appeal, unless the evidence on the second trial was materially different from that on the first trial.

2. INJURY TO EMPLOYE—DEFECTIVE APPLIANCES.

While a locomotive fireman was descending from a moving engine in a careful manner, the step turned, owing to its being loose, and he was thrown to the ground and injured. The locomotive had just come in from a run, during which the step had been safely used several times. The roundhouse foreman at a certain point testified that he removed the step at that place, but he replaced it, or caused it to be replaced, properly, and that he was sure that the nut fastening the step was screwed up tight. *Held* insufficient to warrant a verdict against defendant railroad company for negligence.

In Error to the Circuit Court of the United States for the Western District of Texas.

This cause has once previously been before this court on writ of error. It was then very fully stated. 23 U. S. App. 319, 9 C. C. A. 487, and 61 Fed. 259. The only differences which are claimed to exist between the evidence in the cause on the former writ of error and the evidence as now brought up on the present writ of error are to be found, on the one hand, in the testimony of A. Stiner, a witness in behalf of the defendant below, which is now claimed by

the defendant in error to be more strongly in its favor than on the first trial; and, on the other hand, in the testimony of Alexander Mitchell, a witness for the defendant below, who is now claimed by the plaintiff in error to have testified on the second trial in a different manner from that in which he had testified on the first. The testimony of Stiner, delivered on the second trial and found in the record of this cause, is as follows:

"A. Stiner, a witness in behalf of defendant, testified: 'I was the engineer in charge of engine No. 90 at the time plaintiff, Patton, was hurt, and was the engineer running that engine for some time before. Alexander Mitchell was a competent man to inspect engines. His employment at the time the accident happened was that of foreman at Toyah. The machinist at Toyah was a man named Young. There was no special inspector or repairer at Toyah at that time,—any more than the foreman and machinist. It was the duty of anybody who was controlling the engine to see if anything was wrong. The machinist should do the work of grinding in the blower. The Chinamen did the work of putting in the gasket and changing water. The machinist should do the work of raising the pilot. It is the foreman's business to see that the machinist did it. When the engine went into Toyah, it was my duty, as engineer, to report defects in the engine, and, repairs to be made. It was my duty to examine the engine again before it left Toyah, and see whether or not the repairs called for had been made, and there was no other inspection upon my part to be made at Toyah before we left there.'

"The witness was asked the following questions: 'Q. The attorney for the plaintiff has asked you the question whether it was not a part of the duty of the foreman or machinist not simply to do the repairs pointed out, but to inspect the engine itself, generally, and see whether it was in good condition? A. Yes, sir; it was their duty to look around. Q. If the engineer overlooks anything, they might find it? A. There is times an engineer overlooks something. They might find it. Q. It is their business to look for it? A. Oh, yes; it is their business to look. Q. Do you know, as a matter of fact, whether the step was loose when the engine left Toyah? A. No, sir. Q. Did you examine the step at Toyah? A. I don't know as I examined it. I got off and on. Q. Did you examine the step, to find out whether or not it was loose? A. No, sir; I did not pull on it, or anything like that. Q. You don't know whether it was loose when it left Toyah or not? A. It was not loose when I got on it. The step was not loose when I got on it. Q. Did you examine it to see whether or not it was loose? A. I examined it with my foot. Down at Toyah I simply put my foot on the step, and got up on the engine. I don't remember the run, exactly, now. I used the step at the San Martine tank, or at Prairie, and Van Horn; then again at Blanco and at Hancock; and whether I used it again between Hancock and El Paso, I can't remember.'

"He also testified that the step was not loose when the engine left Toyah,—that he examined it with his foot,—and explained that he ascertained that it was not loose, because he got up on the engine, using this step, several times, as stated above, between Toyah and El Paso, and, while one might get down from the engine, and not discover it, that, in mounting the engine after oiling, he came from front of the engine, and grabbed the hand-hold, put his left foot on this step, and swung his body round to place the right foot in the loop on the tender."

The testimony of Alexander Mitchell, a witness in behalf of the defendant below, was, on the second trial, as follows:

"On the 29th and 30th days of November, 1892, I was the roundhouse foreman of the Texas & Pacific Railway Company at Toyah. The company had a machinist at Toyah at that time. He was not at the roundhouse on Sunday. His name was Charley Young. When he was not there, it was my duty to do the work, to a certain extent,—little jobs. I remember the engine No. 90, on which the plaintiff Patton was employed, coming in."

"The attorney for the defendant here called the witness' attention to the report made by the engineer when the engine reached Toyah on the night of November 29th, viz.: 'Change water, grind in blower, put gasket in front of blower pipe; and raise pilot, also.' The witness was asked the following questions: 'Q. What did you do to that engine? A. I raised the engine in front, without raising the pilot. Q. I mean, did you make the other repairs?

A. No, sir; I did not. Q. The small repairs? A. No, sir; .I did not. Q. State what you did. A. I put some clips or gibs under the springs to raise the pilot up. Q. Did you complete the job? A. I did.· Q. Did you do anything with the part of the engine near the engine step, on the right side? A. In order to do that, I had the step off, and jacks under it. Q. On the right side of the engine? A. Under that side, to hold her up. I had to jack the front end up in order to do the work, and hold the .back end up off the springs. Q. That is what you did? A. Yes. Q. Did you have anything to do with .the step? A. I had it off. Q. Did you put it back there? A. Yes, sir. Q. Did you put it back properly? A. Yes, sir; I had men working with me to do it. Q. Did you see it done? A. I seen it being done. I went into the office and came out again. Q. Did you examine the nut, to see if it was put on right or not? A. The nut was screwed up tight. Q. The step was screwed up tight? A. Yes, sir; I am sure it was screwed up tight. It made two hundred miles. Q. What was the condition of the engine— Was that step in good condition when it left Toyah? A. It left in the morning. Q. When you got through with it? A. When I left the roundhouse the engine was all right.'

"Cross-examination: 'Q. Did you put that jackscrew under the end of the engine? A. I had it put under. Q. You did? A. Yes, sir. Q. Did you take the step off? A. I had to have it taken off. Q. You saw it taken off? A. Yes, sir. Q. You could not take the step off without moving that nut at the top? A. No; I would have to take that off to take the step off. Q. Did you raise the pilot, or not? A. I raised the front end of the engine, and, of course, that raised the pilot. Q. That is the way you raised it? A. That is the way I raised. it. Q. Were you there during the whole time the work was being done about the engine? A. I think I was all the time that the work was being done on the engine,—in and about the office, and about the roundhouse.'

"The witness Mitchell also testified that he had the step put back after taking out the jackscrew, and that the nut was screwed back properly, and that the nut was tight when the engine left the roundhouse at Toyah. The witness Mitchell was here asked, by counsel for plaintiff, if he did not testify on the former trial of this case, in October, 1893, that the step was not moved for the purpose of putting the jackscrews under the end of the engine, and that the nut on the step was not moved while the engine was at Toyah on the trip mentioned, and that Mr. Young was a machinist at Toyah at that time; that it was Sunday, the 30th day of November, 1892, and he (Mitchell), believing that he was competent to do so, undertook to make the repairs needed on the engine himself, and jacked the front part of the engine up for the purpose of raising the pilot, and, finding that he could not accomplish the task of raising the pilot with the force at hand by himself, he did not do the work necessary to raise the pilot or cowcatcher. The witness replied that he had no recollection of so testifying. He was then asked if he did not testify on the former trial of this case that the step mentioned in the evidence, which turned with the plaintiff, Patton, was not moved at all while the engine was at Toyah on the 30th day of November, 1892, and if he did not testify that the nut by which this step was fastened was not moved at all on that trip. He said he had no recollection of so testifying. The witness was then asked the following questions: 'Q. Did you put the gasket in the pipe? A. I did not. Q. Did you grind the blower? A. No, sir; I did not. Q. Why· did you put the jackscrew under that end of the engine? A. I could not raise the engine and fix the engine without doing it. Q. You could not do what you did about the pilot unless you raised the engine? A. Unless I held the back part of the engine up. Q. So, in doing what you did about the pilot, and in raising the pilot as you did raise it, you put these jackscrews under the end of the engine where the step was? A. I had it done. I was there to see it was done. Q. Were you a machinist then, Mr. Mitchell? A. No, sir; I ain't no machinist; that is, I never learned the trade. Q. That was a machinist's work you were trying to do, wasn't it? A. Well, yes; it was a machinist's work, although I can do it.'

"The witness was here asked if he did not testify on the former trial, in October, 1893, that to grind in the blower was a small job, and that he did it, and that to put gasket in front joint of blower pipe was a very light job, and he did it. He answered by saying that he had no recollection of so testifying.

The plaintiff then introduced in evidence the stenographic report of the testimony of Alexander Mitchell, taken upon the first trial of this cause, which was as follows: That he told the Chinamen to get the jackscrews, and under his direction they placed two jackscrews, one on each side of the front of the engine, and that without any instructions from him they brought and put another jackscrew on the ground near the step; that he was out of the roundhouse five or ten minutes, while the Chinamen were there, and that this jackscrew near the step was not placed under the engine in a position to elevate it, and that the step was not moved for the purpose of putting the jackscrews there, and that the nut on the step was not moved while the engine was at Toyah on that trip; that Mr. Young was the machinist at Toyah at that time, and that this was Sunday, the 30th day of November, 1892, and that he (Mitchell), believing that he was competent to do so, undertook to make the repairs needed on the engine himself, and jacked the front part of the engine up for the purpose of raising the pilot, and finding that he could not accomplish the task of raising the pilot, with the force at hand, by himself, he did not do the work necessary to raise the pilot or cowcatcher; that to grind in the blower was a small job, and the witness did this; that to put gasket in front joint of blower pipe was a very light job, and that this work was also done by the witness; that to raise the pilot required the witness to jack up the engine, and put gibs under the spring ends of the engine truck; the engine truck is near the front end of the engine; that the witness did not do this, because it was a pretty big job, and he was doing the work by himself, with the help of only two Chinamen; that the engine was all right, and ran as well as if it had been done, except the pilot was a little low."

After the close of the evidence heard upon the second trial of the cause, the trial judge instructed the jury to return a verdict for the defendant below, "because there is not sufficient testimony to entitle the plaintiff to recover, and no evidence showing any negligence on the part of the defendant," to which instruction the plaintiff below duly excepted; insisting that the court should submit the cause to the jury upon the question of negligence raised by the pleadings and the evidence. The jury thereupon returned their verdict in favor of the defendant, the Texas & Pacific Railway Company. E. M. Patton, the plaintiff below, sued out the present writ of error. The assignment of error complains that the court directed a verdict as stated above. He contends that the evidence on the second trial was materially different from the evidence upon the former trial, and that the evidence tends strongly to show that the plaintiff's injuries were received through the negligence of the defendant's employés at Toyah, in leaving the step attached to the engine in a loose and unsafe condition, and that said employés were charged with the duty imposed by law upon the defendant railway company, of inspecting the engine, and keeping the various parts of the same in a reasonably safe and good condition, and that they negligently failed to perform such duty; that the evidence tends strongly to show that the step which turned with the plaintiff, and caused the injuries he received, was in a loose condition when the engine left Toyah, and that the engine was not inspected by defendant's machinist at Toyah; and that, after repairs were made upon the engine at Toyah, the step was negligently left in a loose and unsafe condition.

Millard Patterson and C. N. Buckler, for plaintiff in error.

P. F. Edwards, P. J. Edwards, and T. J. Freeman, for defendant in error.

Before McCORMICK, Circuit Judge, and BOARMAN and PARLANGE, District Judges.

PARLANGE, District Judge, after stating the facts, delivered the opinion of the court.

When this cause was before this court during the November term of 1893 (23 U. S. App. 319, 9 C. C. A. 487, and 61 Fed. 259), this court said, upon a careful examination of the entire evidence:

"It seems to us that to state the case is sufficient to show that the defendant had not been negligent, and could not justly be held liable. The exception to the charge of the court, and to the refusal of the requested charge, having served to bring up, in the bill of exceptions, a full statement of all the evidence given on the trial, it appears from the face of the record that there was no evidence to sustain the judgment of the circuit court. It is thus manifestly erroneous, and must be reversed."

The cause was remanded to the lower court for further proceedings in conformity with the opinion of this court. At the close of the second trial below, the judge directed a verdict in favor of the Texas & Pacific Railway Company, defendant below. The plaintiff below duly excepted to that action of the trial judge, and he has brought up all the evidence in the bill of exceptions.

It is clear that the opinion of this court on the former writ of error is the law of this cause, and is still controlling therein, unless the evidence on the second trial was materially different from the evidence on the first trial. This court on the former writ of error found, substantially, that by uncontradicted evidence the following facts, among others, were established, viz.: On November 29, 1892, it became necessary to remove and replace the step in question. This was done by the engineer and the plaintiff himself. The nut which fastened the step was made tight. It was properly screwed on, and would not have become loose in a trip from El Paso to Toyah and return. The step was not removed at Toyah. The engine left Toyah at 2 a. m. on the morning of December 1, 1892. During the return trip to El Paso, the plaintiff below and the engineer got off the engine several times, on the right side, while it was standing, and neither of them noticed any disturbance of the step. When they reached El Paso on the return trip, at about 10:30 a. m. on December 1, 1892, they left the engine attached to the train at the depot, both of them getting off the engine on the right side, and using the very step in question. Neither of them noticed that anything was wrong with the step. They went to their homes. A few hours afterwards the plaintiff returned to the engine. It was then in charge of the employés of the railway company for the purpose of being coaled, sanded, and cleaned by others than the fireman, and it was thereafter to be inspected by the machinist. The purpose of the plaintiff in then returning to the engine was to wipe off parts of the engine, and to fill the oil cans and lubricators. He was not required to, but permitted, if he chose, to do that work at the time he did it. It was more convenient to do it while the engine and the oil were still hot. He would have had ample time after the engine had been placed in the roundhouse to do his work. While, as already stated, the engine was in the hands of other employés for the purposes stated, the plaintiff undertook to do, and proceeded with, his work of cleaning parts of the engine, and filling the cans and lubricators. The engine was in motion,—running at the rate of about three or four miles an hour. It was about to stop, when the plaintiff, in order to get out of the way of other employés, and also for the purpose of getting off at the place where the engine was about to stop, stepped down backwards off the engine, using the step in question. The step turned, causing his right foot to fall under the driving wheel

of the engine; and to be crushed by it. The only change in the evidence upon which the plaintiff in error relies for relief from the former decision of this court in this cause, and in fact the only difference in the evidence as heard on the first and on the second trials,—except the evidence of the engineer, Stiner, which is claimed by the defendant in error to be much stronger in its favor now than on the previous occasion,—is that Mitchell, the roundhouse foreman at Toyah, testified on the first trial that he did not remove the step at Toyah, but that all repairs called for by the engineer were made, and, in a general way, that the engine, on leaving Toyah, was in good condition, whereas he testified on the second trial that he did remove the step at Toyah, but that he replaced it, or caused it to be replaced, properly, and that he is sure that the nut "was screwed up tight." In our opinion, this change in the testimony of Mitchell cannot affect what was adjudicated by this court on the former writ of error. This court then found that there was no evidence of negligence on the part of the defendant railway company for which it could be made liable. Under the views then expressed by this court, what evidence of such negligence is there now to be found in the record? If either one of Mitchell's statements be true, the plaintiff in error can derive no benefit from it; for, whether Mitchell did not take off the step at Toyah, or took it off and replaced it properly, the case must go against the plaintiff in error, under the views heretofore expressed by this court. If Mitchell, because of his contradictory statements, is unworthy of belief, his evidence should be disregarded and eliminated. But the fact that Mitchell made two contradictory statements—both of which are favorable to the railway company—cannot be held to be equivalent to, or to supply the place of, proof of negligence on the part of the railway company, directly the reverse of either of the contradictory statements. A bare suspicion that Mitchell did not properly fasten the step at Toyah, arising merely from the fact that he made two contradictory statements, would not have warranted the jury in finding against the railway company. The uncontradicted facts remain established that the plaintiff himself assisted in fastening the step at El Paso; that this was sufficient to secure the nut for the round trip to Toyah and back; that the step was used, and was not loose, while going and returning; that after the arrival at El Paso on the return trip the step was used by the plaintiff himself, and was only found loose a few hours afterwards, while the engine was under the control of other employés of the railway, whose duty it was to coal it, sand it, and do such other necessary things as might be required, except repairing, and when the engine was to be taken immediately thereafter to the roundhouse, where it was to be inspected, and where it would, if necessary, have been repaired. On such facts, and under the views of this court expressed on the first writ of error, the plaintiff below could not recover. The judgment of the lower court is affirmed.