**GENERAL MOTORS CORPORATION,**
Appellant,

v.

**Barbara June MUNCY and Charles Muncy, Appellees.**

No. 21967.

United States Court of Appeals
Fifth Circuit.

Oct. 6, 1966.

---

Leon Jaworski, Sam H. Hood, Jr., Blake Tartt, Houston, Tex., R. O. Kenley, Jr., Longview, Tex., Ira Butler, Ft. Worth, Tex., Thomas W. Watkins, Detroit, Mich., Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for appellant.

Franklin Jones, Marshall, Tex., Wm. Hurwitz, Longview, Tex., Ralph Nader,

Winsted, Conn., Jones, Jones & Baldwin, Marshall, Tex., for appellees.

Before TUTTLE, Chief Judge, and JONES and WATERMAN,* Circuit Judges.

JONES, Circuit Judge:

C. L. Lane and Alice Lane, his wife, on August 27, 1960, purchased a new Chevrolet automobile, manufactured by the appellant, General Motors Corporation, from the Smith Chevrolet Company of Henderson, Texas. On September 15, 1960, after the car had been driven five or six hundred miles at moderate speeds, Mrs. Lane drove the car to Duncan's Five and Ten Cent Store on the Main Street of Kilgore, Texas and diagonally parked against a curb about eight inches in height. On the front seat with Mrs. Lane was her mother, Nellie Hudnall. On the rear seat was a five-year old son of the Lanes. Mrs. Lane left the car and got her son from the rear seat. She had parked close to a truck on the right and suggested to her mother that she slide under the wheel and get out on the driver's side.

The ignition switch was of a design which had been used on Chevrolets since 1948 and was in use on General Motors' Buick cars. It had four positions: "Lock," "off," "on" and "start." The key could be removed from the "on" position with the motor running. If so removed, the switch could be turned on and off without the use of the key. The key could be removed from the "lock" position and the ignition would be cut off.

In leaving the car Mrs. Lane had removed the key and left the ignition switch in the "on" position, with the car in drive gear, with the motor running and, apparently, without setting the brakes. As Mrs. Hudnall was leaving the car on the driver's side, the engine suddenly accelerated, the wheels spun, and the car jumped the curb and on to the sidewalk. The appellee, Barbara June Muncy, was on the sidewalk. The Lane car, with the motor racing, struck Mrs. Muncy and pushed her through a glass store window. Someone reached through the car window and cut off the ignition. Mrs. Muncy, joined by her husband, brought suit in the District Court of Dallas County, Texas, to recover for the severe injuries she had sustained, naming as defendants C. L. Lane, his wife Alice Lane, her mother Nellie Hudnall, Davis Smith, doing business as Smith Chevrolet Company, and General Motors Corporation. Each of the defendants, except General Motors, resided in Rusk County, Texas, and they filed pleas of privilege seeking to transfer the venue to Rusk County. The court sustained the pleas and in so doing held that no bona fide cause of action had been established against General Motors. The decision of the District Court of Dallas County was affirmed by the Texas Court of Civil Appeals. Muncy v. General Motors Corporation, 357 S.W.2d 430. An application was made by the Muncys to the Supreme Court of Texas for a writ of error but, before a ruling was made they dismissed their application and took a voluntary non-suit in the state district court. The Muncys then filed suit in the United States District Court for the Eastern District of Texas against the same defendants as had been sued in the state court. One trial resulted in a mistrial. On a second trial the Muncys recovered a judgment for $225,000 against the Lanes, Mrs. Hudnall and General Motors. Only General Motors has appealed.

Mr. and Mrs. Muncy sought recovery against the appellant, General Motors Corporation, upon two theories. The first theory is that General Motors negligently designed the ignition switch used on the Lane automobile in a manner permitting the ignition switch key to be withdrawn with the motor running and that such negligent action was a proximate cause of the injuries sustained by Mrs. Muncy. The other theory is that General Motors negligently designed and assembled the Lane automobile in such manner that the accelerator would hang

* Of the Second Circuit, sitting by designation.

or stick when the motor was running and the car was in gear so as to cause the wheels of the car to revolve rapidly although no direct pressure was being applied to the accelerator by any human agency, and that such negligent action was a proximate cause of Mrs. Muncy's injuries.

The first of these contentions was considered and fully discussed by the Court of Civil Appeals of Texas in its opinion. Although the decision of the Texas court is not in any sense res judicata, it is the considered conclusion of this Court that the Texas court has clearly and correctly set forth the principles which control the issue presented by the claim of a defective design of the ignition switch. It follows that under the law of Texas the appellees cannot recover from General Motors upon their first theory. The Federal courts are bound by the law of Texas on this question. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487. Two recent decisions [1] of other courts of appeals are in accord with the position to which we adhere.

In the district court and before this Court, the primary thrust of the Muncys' contention against General Motors is predicated upon their claim of a defective design of the ignition switch. It was also asserted before the district court, and it is here asserted that General Motors negligently designed and assembled the accelerator system of the Lane automobile and that its negligent action was a proximate cause of Mrs. Muncy's injuries.

There was evidence that an accelerator mechanism could be manufactured defectively and in such a manner that it would stick, and that a car with such a defective accelerator might have been delivered to a consumer purchaser. There was no positive evidence that the accelerator on the Lane car was defective. It gave no trouble before the accident. It gave no trouble after the accident. If any inspection was made of the accelerator equipment after the accident, it is not shown by the record before this Court.[2] There was evidence that sometime before the accident the engine of the Lane Chevrolet had idled high and that this was corrected by a carburetor adjustment. There was evidence that some brake repair or adjustment was made. There was no evidence that the carburetor or brake had anything to do with the accident in which Mrs. Muncy was injured or that would permit the jury to draw such an inference.

Mrs. Lane did not see her mother during the time the motor speeded and the car moved. Mrs. Hudnall was shocked. She could not remember how she moved from the right side of the car toward the left side of the car. She could not remember how far she had moved before the motor began racing. She could not remember what position she was in or what movement she had made. She said she did not know whether she got out on the driver's side or the passenger's side. She knew nothing about how the motor was stopped. She did not know whether her foot struck the accelerator or not. She did not have any idea as to why the car jumped forward and didn't know whether the motor was running or not. She didn't think she froze on the accelerator pedal. She was asked if she remembered that she didn't have any conscious knowledge of getting on a pedal and holding it down, and in reply she said that if she did she didn't know it. In response to a general question as to her activities from the time her daughter got out of the car until it lurched forward, Mrs. Hudnall stated that she didn't recall any-

---

1. Evans v. General Motors Corporation, 7th Cir. 1966, 359 F.2d 822; Gossett v. Chrysler Corporation, 6th Cir. 1966, 359 F.2d 84.

2. This appeal is to be decided without consideration of the testimony before the state court of a mechanic "that he tested the accelerator linkage after the accident and inspected the accelerator and found nothing mechanically wrong." 357 S.W.2d 430, 436.

thing she did at the time and she did not know where her feet were. Later, and after testifying that she didn't know the accelerator from the brakes, Mrs. Hudnall was asked, "Then you know you didn't have your foot on anything there holding it down, don't you?" Although she had twice denied having any recollection of the circumstances, she was led into giving an "I did not" answer to the question. The testimony of other witnesses shed no light upon whether or not Mrs. Hudnall kept her foot on the accelerator.

This is a diversity case and the law of Texas will provide the principles for determining liability. In the Texas case of Muncy v. General Motors Corporation, supra, the court accepted the Restatement rule as follows:

A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured. Restatement, Torts § 395. 357 S.W.2d 430, 435. See Ford Motor Co. v. Mathis, 5th Cir. 1963, 322 F.2d 267.

The changes in the language of the above Restatement section made in Restatement 2d do not have any application here. It is the theory of the Muncys that Mrs. Hudnall pushed the accelerator to the floor and removed her foot but because the accelerator was defective, it stuck and the motor continued to run at full speed until a bystander cut off the ignition switch. There is no available hypothesis as to how the accelerator was activated except that Mrs. Hudnall stepped on it as she was moving from one side of the car to the other. If the evidence warranted the inference that she removed her foot or feet from the accelerator, and kept them removed, then it could be plausibly argued that there might be an inference drawn by the jury,[3] under the doctrine of res ipsa loquitur, that the accelerator stuck and that its sticking was caused by the negligent design or assembly of the accelerator.

We are not overlooking the general rule that questions of fact are for the jury. A corollary of this rule is that if there is no evidence of probative value to sustain a fact finding, a judgment based upon such finding will be reversed. Wood v. Stone, Tex.Civ.App., 359 S.W.2d 68; Texas & Pacific Ry. Co. v. Patton, 5th Cir. 1894, 61 F. 259, 9 C.C.A. 487, aff. Patton v. Texas & Pacific Ry. Co., 5th Cir. 1899, 95 F. 244, 37 C.C.A. 56, dismissed 166 U.S. 717, 17 S.Ct. 997, 41 L.Ed. 1186, aff. 179 U.S. 658, 21 S.Ct. 275, 45 L.Ed. 361. The only evidence from which it might be inferred that Mrs. Hudnall, having pressed the accelerator to the floor, took her foot off the accelerator and kept it off, is the statement, put into her mouth by counsel, that she didn't have her foot on anything holding it down. This statement, made in response to a leading question, is so inconsistent with her several times reiterated testimony of being without recollection as to what transpired that it is without probative force and is to be disregarded, even though there was no objection made to the leading question which elicited the statement. Therefore, if it could be said that there was a finding, implicit in the jury verdict, that Mrs. Hudnall did not hold the accelerator down, such finding could not be sustained since testimony which has no probative force cannot be made the basis of a finding. Wood v. Stone, supra; Iowa Mutual Insurance Co. v. Redden, Tex.Civ.App., 326 S.W.2d 727; Pruner v. Lovejoy, Tex.Civ.App., 314 S.W.2d 651.

---

3. The general verdict for the Muncys does not indicate whether there was a finding against General Motors of negligence in the design of the ignition switch or in the design and assembly of the accelerator, or both.

 The fact of an accident does not prove or create a presumption of negligence. Interstate Circuit v. Le Normand, 5th Cir. 1938, 100 F.2d 160; Emmons v. Texas & P. Ry. Co., Tex.Civ. App., 149 S.W.2d 167; Talley v. Beever & Hindes, 33 Tex.Civ.App. 675, 78 S.W. 23. The accelerator might have been held down by Mrs. Hudnall's foot. It might have stuck due to some external interference with normal action following the release of pressure applied by foot. It might have been due to negligence of General Motors in so designing or assembling the accelerator mechanism as to cause it to stick when pushed to the floor-board. There might have been some other cause for the motor racing and the wheels spinning. The plaintiff, in an action to recover for personal injuries alleged to have been caused by a negligent act or omission of a defendant, must prove the act or omission upon which liability is predicated. If there is evidence of causation, the doctrine of res ipsa loquitur may be invoked to supply a deficiency of proof as to negligence. National Hotel Co. v. Motley, Tex.Civ.App., 123 S.W.2d 461; Bish v. Employers Liability Assurance Corporation, 5th Cir. 1956, 236 F.2d 62. Under Texas law the doctrine of res ipsa loquitur is not applicable on the facts of this case.

 Although the governing substantive law is Texas law, the question as to whether the Muncys presented sufficient evidence to take her claim to the jury is a matter of Federal law. Ford Motor Co. v. McDavid, 4th Cir. 1958, 259 F.2d 261, cert. den. 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229. Where, as in the case before us, the accident may have resulted from one of several causes, for some of which the appealing defendant was not responsible, a verdict against such defendant is based upon speculation and conjecture and cannot stand. New York Central Railroad Company v. Ambrose, 280 U.S. 486, 50 S.Ct. 198, 74 L. Ed. 562; Ford Motor Co. v. McDavid, supra; Interstate Circuit v. Le Normand, supra; Emmons v. Texas & Pac.

Ry. Co., supra; Texas & Pacific Coal Co. v. Kowsikowsiki, 103 Tex. 173, 125 S.W. 3.

We are led to the conclusion that the motion of General Motors for a directed verdict should have been granted. The judgment of the district court is reversed and the cause is remanded with directions to enter a judgment for General Motors Corporation.

Reversed.