IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 22, 2005

## SHARON BAILEY v. AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY, ET AL.

Appeal from the Chancery Court for Davidson County
No. 00-3455-II    Carol McCoy, Chancellor

---

### No. M2003-01666-COA-R3-CV - Filed December 29, 2005

---

An unsuccessful party to an arbitration proceeding appeals the trial court's confirmation of the arbitration decision. The challenge is based on alleged ambiguities in the agreement to arbitrate and alleged failure by the arbitrator to disclose potential conflicts. We affirm the trial court's confirmation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM B. CAIN, and FRANK G. CLEMENT, JR., JJ., joined.

Peter T. Skeie, Nashville, Tennessee, for the appellant, Sharon Bailey.

Vanessa Griffith, Houston, Texas; Eric Stevens, Nashville, Tennessee, for the appellee, American General Life and Accident Insurance Company.

### OPINION

Ms. Bailey appeals on two grounds the trial court's failure to vacate an arbitrator's decision that found no merit to her claims against America General Life and Accident Insurance Company ("AGLA"). First, Ms. Bailey argues that the arbitrator's decision is of no effect since there was not an enforceable agreement to arbitrate between the parties. Second, she argues that even if the parties were required to arbitrate, the decision should be vacated because the arbitrator failed to adequately disclose potential conflicts of interest. We agree with the trial court that Ms. Bailey has not provided sufficient grounds to disturb the arbitrator's decision.

## I. FACTS

The material facts of this case are not in dispute. During the application process and upon her employment, Ms. Bailey agreed to resolve disputes with AGLA through its dispute resolution process. Ms. Bailey acknowledges agreement with several documents from AGLA that describe the parameters of the dispute resolution process, which includes an obligation to arbitrate.

First, in September of 1999, Ms. Bailey signed an application for employment ("Application") with AGLA that discusses dispute resolution and arbitration in the following provision:

> EMPLOYEE DISPUTE RESOLUTION PROGRAM:
>
> Notwithstanding any provisions disclaiming the existence of a contractual relationship, an Employee Dispute Resolution Program is in place at American General. The program requires resolution of any employee dispute through informal and formal means, including binding arbitration. These means are exclusive means of resolving disputes. *No right of court action exists.* The details of the program, including any limitations or exclusions, are furnished to each employee upon hire and can be obtained by applicants upon written request, and are herein incorporated into this agreement by reference. **I hereby acknowledge by signing this application, that all legal disputes arising under federal, state or local law regarding this application for employment (including, but not limited to, claims of discrimination) will be resolved through the Employee Dispute Resolution Program, and that I hereby waive the right to proceed in court. I further acknowledge that if I am hired, a term and condition of employment with American General is that both American General and I agree to resolve all employment related disputes through informal and formal means, including binding arbitration, through the Employee Dispute Resolution Program and that both parties waive their right to proceed in court pursuant to the Program.** (emphasis in original).

Second, Ms. Bailey acknowledges receipt of the Employee Dispute Resolution Program referenced in the Application which describes the methods available to employees to resolve disputes including both informal intervention and formal mediation or arbitration.[1]  First, employees are

---

[1]Each employee, including Ms. Bailey, was given a letter from the President of AGLA and a copy of the Employee Dispute Resolution Program. The letter from the President provides in pertinent part:

> It is important for you to know that employees will not be waiving any substantive legal rights under this new Program. Rather, the Program provides that any substantive legal issues you may have will be resolved in mediation or before a neutral arbitrator, whose decision will be final and binding on you and the company. This does mean, however, that under the Program **you waive any**
>
> (continued...)

encouraged to speak with their supervisors to resolve problems. If the problem is not resolved or pertains to the supervisor, the employee may go to an Employee Relations Conference with a dispute. If neither of these options satisfies the employee, then mediation and arbitration are available. The Program contains the following language:

> **The AGLA Employee Dispute Resolution Program is the sole means of resolving employment-related disputes between you and the company or you and another employee, including disputes for legally protected rights such as freedom from discrimination, retaliation, or harassment.**
>
> **You are still free to consult or file a complaint with any appropriate state or federal agency, such as the EEOC, regarding your legally protected rights. However, this Program must be used instead of a trial if you are not satisfied with the results of the government agency process.**
>
> **Seeking, accepting, or continuing employment with AGLA means that you agree to resolve employment-related claims against the company or another employee through this process instead of through the court system. This program does not alter AGLA's at will employment policy.** (emphasis in original).

When Ms. Bailey was hired later that month, on September 20, 1999, she signed a third document entitled the Employee Acknowledgment Concerning American General Life and Accident Insurance Company's Employee Dispute Resolution Program ("Acknowledgment"). The Acknowledgment provided that Ms. Bailey acknowledged receipt of the Employee Dispute Resolution Plan ("Resolution Plan"). The final paragraph of the Acknowledgment provides as follows:

> By my signature below, I acknowledge and understand that I am required to adhere to the Employee Dispute Resolution Plan and its requirement for submission of employment disputes to a four option process which may include mediation and/or

---

[1](...continued)

**procedural rights you have to bring a court action and to a jury trial** concerning any employment dispute you may have with the Company, including claims of discrimination based on race, national origin, gender, religion, age, or disability under any federal or state civil rights statute. Such claims are among those that must be submitted to arbitration once the Dispute Resolution Program becomes effective.

A copy of the new Employee Dispute Resolution Program is enclosed. Every individual who works for American General is subject to the new Program, including the binding arbitration provision, even if an employee does not sign the Acknowledgment Form. Your continued employment after the date you receive the enclosed documents will constitute your acceptance of the Program.

While the letter is not a part of any agreement with AGLA, it does reflect AGLA's efforts to explain to its employees the requirement of arbitration and its consequences.

3

arbitration. I further understand that my employment or continued employment with the Company constitutes my acceptance of the terms of this provision as a condition of my employment or continued employment.

The Resolution Plan referenced in the Acknowledgment is the fourth document provided Ms. Bailey that describes the parties' obligation to arbitrate. The Resolution Plan makes clear that it applies to virtually all disputes between AGLA and its employees including "all claims amounting to a common law tort . . . and all claims under any federal, state, or local human rights or employment rights statute . . . including, but not limited to Title VII of the 1964 Civil Rights Act . . . and any similar state statute." Provisions of the Resolution Plan provided Ms. Bailey that are pertinent to this case are as follows:

4. **Resolution of Disputes**

All Disputes not otherwise settled by the Parties by mutual agreement shall be finally and conclusively resolved under this Plan and the [AGLA Dispute Resolution Rules, "Rules"] which shall provide the sole and exclusive means for resolution of such disputes.

8. **Applicable Law**

A. The [Federal Arbitration Act, 9 U.S.C. § 1 *et. seq.*, "Act"] shall apply to this Plan, the Rules, and any proceedings under the Plan or the Rules, including any actions to compel, enforce, vacate or confirm proceedings, awards, orders of a Referee, or settlements under the Plan or the Rules.

10. **Exclusive Remedy**

Proceedings under the Plan shall be the exclusive, final and binding method by which disputes are resolved. Consequently, the institution of a proceeding under this Plan shall be a condition precedent to the initiation of any lawsuit by the Employee against the Company or any lawsuit by the Company against the Employee arising out of the employment of an Employee by the Company and any such lawsuits shall be limited to those under the Act.

15. **Consent**

**Employment or continued employment after the Effective Date of this Plan constitutes consent by both the Employee and the Company to be bound by this Plan, both during the employment and after termination of employment.** (emphasis original).

4

In the event the parties are unable to resolve a dispute informally, the fifth document AGLA provided to Ms. Bailey, the Rules referenced in Section 4 of the Resolution Plan, provide the procedural framework for the formal dispute resolution alternatives of mediation and arbitration. Whether mediation or arbitration is applicable is determined as follows:

> If the Parties agree on a procedure, [the American Arbitration Association] will implement this agreement to the extent consistent with AAA's rules upon payment of any applicable fee. If the Parties cannot agree, or if the Parties have previously attempted and failed to resolve the Dispute by mediation or another non-binding mechanism, the Dispute shall be arbitrated under these Rules.

The Rules provide the mechanism for selecting an arbitrator by the AAA including a requirement that before accepting an appointment a prospective arbitrator "shall disclose any circumstances likely to . . . create a presumption of bias." If there is such a disclosure, the AAA "will either replace that person or communicate the information to the parties for comment. Thereafter, AAA may disqualify that person and its decision shall be conclusive." Like the Resolution Plan, the Rules provide that judicial review of the arbitration proceeding shall be governed by the Federal Arbitration Act.

In proceedings before the trial court, Ms. Bailey acknowledged that the Application, Resolution Program, Acknowledgment, Resolution Plan, Resolution Rules, together with the AGLA Legal Consultation Plan[2] are the documents that "constitute, together or in combination," a possible contract.

On November 6, 2000, Ms. Bailey filed suit against AGLA in chancery court for violation of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401, relating to a hostile work environment, and for the commission of various torts including negligent infliction of emotional distress and outrageous conduct.[3] On February 1, 2001, AGLA filed a Motion to Compel Arbitration and Stay Proceedings based upon Ms. Bailey's agreement to arbitrate.

On August 15, 2001, the trial court ordered Ms. Bailey to arbitrate her claims against AGLA and stayed the trial court's proceedings pending arbitration. Ms. Bailey did not seek interlocutory appeal of this order.

The parties then proceeded with the arbitrator selection process described in the Plan and Rules administered by AAA. Through this process Barbara Moss, a partner with the law firm of Wyatt, Tarrant and Combs, was conditionally selected by the AAA. On January 11, 2001, AAA notified the parties by letter of this conditional selection and provided them Ms. Moss's disclosure

---

[2]The provisions of the AGLA Legal Consultation Plan do not have a bearing on this appeal.

[3]The complaint alleges Ms. Bailey was raped at her home by Mr. Smith, a defendant in this lawsuit, who was an employee of a temporary personnel agency, Staffing Solutions, which had contracted with AGLA to supply full time temporary workers. The allegations against AGLA relate to its actions after notice of the alleged rape.

statement. This letter to counsel for Ms. Bailey and AGLA from AAA directed the parties as follows:

> Any objections to the continued service of the arbitrator based on the above disclosure should be filed with this office, copying all other parties, on or before **January 16, 2002**. The AAA will make a determination on any objections raised, after receiving comments from the parties, in accordance with the rules. (emphasis original).

The disclosure provided by Ms. Moss and forwarded to the parties provided as follows:

> In checking with my firm members, I find that we are currently representing American General in one matter in Louisville and another matter in Lexington, Kentucky. Here in Nashville, a former member of the firm, Nancy Vincent, also represented American General from time to time. I assume that the claimant will not consent to this conflict, but let me know.

After receiving this disclosure, counsel for Ms. Bailey did not object to the appointment of Ms. Moss and did not ask for further elaboration. Therefore, Ms. Moss was selected by AAA and the arbitration process proceeded.

The arbitration hearing occurred on August 20, 2002, and on October 22, 2002 the arbitrator issued her decision finding in AGLA's favor. Two weeks after the arbitrator rendered her decision, Ms. Bailey filed a Motion to Vacate the Arbitration because the arbitrator allegedly failed to disclose actual and apparent conflicts of interest. On April 3, 2003, the trial court issued its order denying Ms. Bailey's request to vacate the arbitration. The trial court found as follows:

> The Arbitrator disclosed to the parties both an existing relationship between her firm and American General and a prior relationship of representation between the same. The purpose of arbitration is to bring closure to disputes submitted to this forum of alternative dispute resolution. Both federal and state law limit the circumstances in which a Court may intervene following submission of a controversy to arbitration.

> It is the opinion of this Court that the Plaintiff has not presented sufficient proof to justify the Court to intervene in this arbitration. In the last sentence of her disclosure, the Arbitrator states "I assume that the claimant will not consent to this conflict, . . ." It is clear that the Arbitrator believed she had disclosed a sufficient relationship to put the Plaintiff on notice not only of a conflict but also of a reason to select another Arbitrator. This Court does not find the disclosure to be misleading. The Arbitrator's disclosure was sufficient to meet the requirements of both the Federal Arbitration Act and the Tennessee Uniform Arbitration Act. It is the opinion of this Court that a reasonably prudent person would be placed on notice to make

6

further inquiry as to any objectionable relationship by virtue of the January 11, 2002 disclosure. By selecting the Arbitrator after receiving her subject disclosure, the Plaintiff waived any objection she may have had as to the Arbitrator's independence.

Finding the Plaintiff's Motion to Discovery to be without merit, the Court now turns to the Plaintiff's Motion to Vacate the Arbitrator's Award. For the same reasons stated above in denying additional discovery, and viewing all of the evidence regarding the relationship between the Arbitrator, the Arbitrator's firm and American General, in the light most favorable to the Plaintiff, this Court finds there is insufficient evidence to support vacatur of the Arbitrator's award under either the Federal Arbitration Act or the Tennessee Uniform Arbitration Act.

The trial court then confirmed the arbitrator's award pursuant to the Tennessee Uniform Arbitration Act. Tenn. Code Ann. § 29-5-312.

Thereafter, on April 25, 2003, Ms. Bailey asked the court to alter or amend its order. The trial court denied the request on June 25, 2003 finding as follows:

Waiver of the Right to Object to the Arbitrator

The Court has carefully considered the arguments raised by Plaintiff that she did not waive her right to challenge the arbitrator's partiality notwithstanding the arbitrator's disclosures at the outset of the arbitration. In connection with this analysis, the Court has considered and reviewed all of the cases cited by the parties and many others not cited by the parties. After reviewing these cases, the Court finds that the Plaintiff did waive her right to challenge the award based on alleged non-disclosure by the arbitrator. The cases consistently hold that a party who is on notice that the arbitrator has a conflict of interest or <u>may have</u> a conflict of interest is obligated to inquire further. Failure to do so constitutes a waiver of that conflict.

To hold otherwise would run afoul of one of the most valuable benefits of arbitration which is expedient and inexpensive dispute resolution. To hold otherwise would also encourage parties to delay in acting upon disclosures in hopes of a positive result while maintaining the ability to challenge an adverse result. *See e.g., Kiernan v. Piper Jaffray Companies, Inc.*, 137 F.3d 588, 593 (8th Cir. 1998) (holding that parties to an arbitration waived their evident partiality claim "by weighing their options at the time of [the arbitrator's] amended disclosures and deciding to go forward with her on the panel"); *Gotwald v. Gotwald*, 768 S.W.2d 689, 694 (Tenn. Ct. App. 1988) (requiring that a party must complain and seek relief immediately after the occurrence of a prejudicial event and "may not silently preserve the event as an 'ace in the hole' to be used in the event of an adverse decision").

7

It is this Court's opinion that the arbitrator's disclosure would lead a reasonable person to assume a bias or conflict of interest exists, or at the very least to put a reasonable person on notice of the potential partiality of the arbitrator. The Plaintiff had adequate time to object to the arbitrator before arbitration commenced. To allow the Plaintiff to object after arbitration has been completed would undermine the very essence of the arbitration process, which is intended to expedite resolution and avoid unnecessary judicial entanglement with resolution of the dispute.

Sufficiency of the Arbitrator's Disclosure

Plaintiff contends that the arbitrator's disclosure lacked sufficient detail and, therefore, demonstrates evident partiality by the Arbitrator. To succeed on this argument, Plaintiff must adduce proof that the alleged partiality was "direct, definite, and capable of demonstration." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 626 (6th Cir. 2002). In addition, the challenging party must establish "specific facts that indicate improper motives on the part of the arbitrator." *Id.*

Again, in reviewing the information disclosed by the arbitrator, no such inference is possible. Indeed, the fact that the arbitrator affirmatively disclosed that there was a potential conflict given her firm's representation of American General precludes a finding that the arbitrator had improper motives in making this disclosure. Moreover, not only did the arbitrator disclose her belief that a conflict might exist, she specifically named an attorney who had been involved in the prior representation - Nancy Vincent, a former partner. Given the arbitrator's efforts to put the parties on notice of her firm's connection to American General, there is no indication that the arbitrator sought to act improperly.

Ms. Bailey then appealed the trial court's orders to compel arbitration and failure to vacate the arbitration on two (2) separate grounds. First, Ms. Bailey argues the trial court should not have compelled arbitration because the documents comprising her agreements with AGLA did not contain an enforceable obligation to arbitrate. Second, Ms. Bailey argues that the trial court should have vacated the arbitrator's decision because of the arbitrator's failure to disclose potential conflicts or, alternatively, the trial court should have at least allowed Ms. Bailey to conduct discovery into potential conflicts.

## II. AGREEMENT TO ARBITRATE

Ms. Bailey first appeals the trial court's original decision to compel arbitration. She argues that AGLA has failed to prove the existence of an enforceable agreement to arbitrate because the terms of the documents are too indefinite and ambiguous. As part of this argument, Ms. Bailey claims that the contracts are ones of adhesion and should thus be strictly construed against AGLA.[4] Ms. Bailey does not deny that she agreed to the Application, Acknowledgment, Resolution Plan and Rules. Her primary argument focuses on whether those documents contain an obligation to arbitrate.

Under both the Federal Arbitration Act ("FAA") and the Tennessee Uniform Arbitration Act ("TAA"),[5] parties cannot be compelled to arbitrate any dispute that he or she has not expressly agreed to arbitrate. *Frizzell Construction Company, Inc. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 84 (Tenn. 1999). In deciding whether the parties agreed to arbitrate a certain matter, courts generally should "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924 (1995); *T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC*, 93 S.W.3d 861, 866-70 (Tenn. Ct. App. 2002) (enforceability of contract containing arbitration provision governed by state contract law). As a general rule, agreements to arbitrate under both the FAA and the TAA are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 356-360 (Tenn. Ct. App. 2001) (quoting the FAA and holding that the question of whether grounds exist to revoke is determined by state contract law); *see also* Tenn. Code Ann. § 29-5-302. Therefore, Tennessee contract law governs whether the agreement to arbitrate is too vague and indefinite to be enforceable.[6] That is a question of law that this court reviews *de novo*.

The "central tenet" of contract construction in Tennessee is that the intent of the contracting parties when the agreement is executed governs. *Planters Gin Company v Federal Compress & Warehouse Company, Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). The parties intent is "presumed" to

---

[4]She does not claim they are unconscionable and unenforceable on that basis. *See Cooper v. MRM Investment Company*, 367 F.2d 493, 499-505 (6th Cir. 2004) (discussing Tennessee law on adhesion contracts, the unconscionability and enforcement thereof, and the proof required to establish a contract of adhesion and unconscionability in the context of an employment agreement with an arbitration clause).

[5]The FAA applies to contracts "involving" interstate commerce. *See Frizell Construction Co., Inc. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 83-84 (Tenn. 1999) (discussing the interstate commerce requirement). There is no evidence in this record about the issue of interstate commerce, and the issue was not raised. The Dispute Resolution Plan states that the FAA shall apply to the Plan and any proceedings thereunder, including actions to compel, vacate or confirm orders resulting from the arbitration. In their briefs, the parties cite at various times to both the FAA and the TAA. Whether the FAA or the TAA governs the specific issues raised in this appeal is of no practical significance because the problems the FAA was intended to cure have been virtually eliminated by the enactment in Tennessee and other states of the Uniform Arbitration Act. The UAA and FAA have similar or identical provisions on the relevant issues. No question of pre-emption is presented herein. *See Frizzell*, 9 S.W.3d at 84 (discussing pre-emption of FAA).

[6]The parties made no other choice of substantive law in the documents. The documents were executed in Tennessee, and the work was performed here. Consequently, Tennessee law applies. The parties agree.

be in the words of the contract. *Id*. If the terms are clear and unambiguous, then "the literal meaning of the language controls the outcome." *Id*. It is accurate that a contract must be sufficiently definite to be enforced and that indefiniteness on an essential term may prevent creation of an enforceable contract. *Doe v. HCA Health Services of Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001). However, a contract is ambiguous only when it is of "uncertain meaning and may fairly be understood in more ways than one." *Id*.

Even if we strictly construe the terms against AGLA, it is still clear that Ms. Bailey agreed to binding arbitration. The Application, signed by Ms. Bailey, has three provisions wherein Ms. Bailey agrees that she waives any right she may have to proceed in court. When Ms. Bailey accepted employment with AGLA in September of 1999, she signed the Acknowledgment agreeing to comply with the Resolution Plan which incorporates the Rules. The Acknowledgment evidenced Ms. Bailey's agreement to be bound by the dispute resolution process in the Plan, which may include arbitration. The Resolution Plan clearly included within its coverage the tort claims and state human rights claims raised by Ms. Bailey. The Rules provided that if the dispute was not informally resolved to both parties' satisfaction, then the parties agreed to arbitrate the matter. The previously quoted Resolution Plan and Rules clearly require that AGLA and Ms. Bailey submit employment disputes to binding arbitration. There are no vague or ambiguous provisions in the Application, Acknowledgment, Resolution Plan or Rules regarding the obligation to arbitrate. It is also clear that agreeing to arbitration is a waiver of the right to pursue relief in the courts. The terms of these documents are crystal clear and in no way of "uncertain meaning" or ambiguous.

Ms. Bailey attempts to argue that since the Acknowledgment referenced the Program in its title ("Employee Acknowledgment Concerning American General Life and Accident Insurance Company's Employee Dispute Resolution Program") yet discusses the Plan in its text, then an ambiguity is thereby created. We disagree. Ms. Bailey's Application references the Program, which discusses the dispute resolution process generally, including informal intervention and formal arbitration. When hired, Ms. Bailey then signed the Acknowledgment which discusses the Plan, the document that, together with the Rules, provides the details about the arbitration process. Reading their documents together, there is no ambiguity. Ms. Bailey maintains that reference to a "four option process" in the Acknowledgment creates confusion about the necessity of arbitration. It is likewise clear that the "four option process which may include . . . arbitration" simply means that if a dispute is not resolved earlier then it goes to arbitration. If a dispute is resolved informally then arbitration is not required. Ms. Bailey's argument that the first option in the four option program is unclear is similarly without merit in this challenge to an arbitrator's decision.

For these reasons, we agree with the trial court that Ms. Bailey was obligated to submit her employment claims to binding arbitration.

## III. CONFLICT OF INTEREST DISCLOSURE

For her second ground of appeal, Ms. Bailey claims that the arbitrator's failure to disclose conflicts of interest requires that her decision be vacated. It is important to note that Ms. Bailey does not claim that Ms. Moss failed to disclose any direct involvement she had with AGLA. The disclosure made by Ms. Moss did not purport to list all matters handled by her firm for AGLA. It put Ms. Bailey on notice that the arbitrator's firm represented AGLA on unspecified present and past matters. In effect, Ms. Bailey argues that the arbitrator's disclosure should have provided more details about the matters the arbitrator's firm handled for AGLA.

The Rules governing arbitrator selection specifically required that any potential disclosed conflict be provided to the parties "for comment." The letter from AAA specified the parties had until a date certain to object. As the trial court noted, the arbitrator even stated that Ms. Bailey would probably object to her appointment based on the disclosure. At that juncture, Ms. Bailey was entitled to object to the appointment or ask for further information. It is clear in the record that Ms. Bailey took no action whatsoever.

The terms of the Resolution Plan and Rules provide that judicial review of an arbitrator's decision shall be pursuant to the Federal Arbitration Act.[7] The FAA specifies four (4) grounds that are available to vacate an arbitrator's decision:

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).[8]

According to Ms. Bailey, the arbitrator's failure to properly disclose potential conflicts resulted in an arbitrator's decision that was obtained by "undue means," that was evidently partial,

---

[7]The Tennessee Supreme Court has held that the Tennessee Uniform Arbitration Act governs the scope of judicial review of arbitration. *Arnold v. Morgan Keegan & Company*, 914 S.W.2d 445, 447-48 (Tenn. 1996). That case involved review of the arbitrator's decision on the merits of the dispute. The issue before us involves matters outside the decision of the arbitrator. In any event, the TAA and the FAA include virtually identical language establishing the relevant grounds for vacating an arbitrator's decision.

[8]These grounds are virtually identical to those found in Tennessee's codification of the Uniform Arbitration Act, Tenn. Code Ann. § 29-5-313(a).

and that was the result of arbitrator misconduct. Although different statutory grounds are alleged, they are all based on the claim that the arbitrator did not disclose the full extent of her firm's relationship with AGLA or disclose with sufficient detail.

An arbitrator's failure to disclose a material relationship with one of the parties can constitute "evident partiality" requiring vacatur of the arbitrator's award. *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 147-48, 89 S.Ct. 337, 339 (1968). This case, however, is clearly distinguishable from *Commonwealth* since Ms. Bailey was put on notice that the arbitrator's firm had present and past dealings with AGLA prior to the arbitration, had an opportunity to object or seek clarification, and yet failed to act in the eight months between the AAA letter and the arbitration.. In other words, Ms. Bailey chose, in effect, to remain ignorant.

It is well settled that a party to arbitration is not entitled to be aware of the possibility of impartiality prior to the arbitration and then later raise it as a ground to vacate the arbitrator's decision. In *Cook Industries Inc., v. C. Itoh & Co.*, 449 F.2d 106 (2d Cir. 1971), a party challenged an arbitration decision on the ground that the employer of one of the arbitrators had substantial business dealings with one of the parties to the arbitration. *Id*. at 107. The trial judge found that the party challenging the arbitrator's decision was aware of the relationship at the time of the arbitration. *Id*.

> Appellant cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first. "Where a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground. His silence constitutes a waiver of the objection. *See San Carlo Opera Co. v. Conley, D.C.S.D.N.Y.* 1946, 72 F.Supp. 825, 833, affirmed 2 Cir., 1947, 163 F.2d 310." *Ilios Shipping & Trading Corp. S.A. v. American Anthracite & Bituminous Coal Corp.*, 148 F.Supp. 698, 700 (S.D.N.Y.) aff'd per curiam, 245 F.2d 873 (2d Cir. 1957); *see also Garfield & Co. v. Wiest*, 432 F.2d 849 (2d Cir. 1970), *cert. denied*, 401 U.S. 940, 91 S.Ct. 939, 28 L.Ed.2d 220 (1971).

*Cook Industries, Inc.*, 449 F.2d at 108.

In *Lucent Technologies v. Tatung Co.*, 379 F.3d 24 (2d Cir. 2004), a party to the arbitration, Tatung, sought to vacate an arbitrator's decision because it claimed it never received a copy of the arbitrator's disclosure statement sent to the parties by AAA. *Id*. at 27-28. Tatung claimed that the disclosure it did not receive strongly suggested partiality on the part of the arbitrator requiring vacatur of the arbitrator's decision. *Id*. at 27. Tatung argued that *Commonwealth Coatings* required that an award be vacated when one party is not informed of a material relationship between the other party and the arbitrator. The Second Circuit disagreed, stating:

12

Tatung's proposed rule . . . encourages parties to remain ignorant of potential conflicts until after losing in arbitration . . ."[i]nstead of rewarding diligence at the beginning of arbitration proceedings, such a result would 'encourage the losing party to every arbitration to conduct a background investigation of each of the arbitrators in an effort to uncover evidence of a former relationship with the adversary.'" *Lucent Techs., Inc.*, 269 F.Supp.2d at 405 (quoting *Merit Ins. v. Leatherby Ins. Co.*, 714 F.2d 673, 683 (7th Cir. 1983)). Only after obtaining an unfavorable result would a party search for relationships between an arbitrator and an opposing party in hopes of finding a "pretext for invalidating the award," *Commonwealth Coatings*, 393 U.S. at 151, 89 S.Ct. 337.

*Lucent Technologies*, 379 F.3d at 29. *See Kiernan*, 137 F.3d at 593 (declining to vacate award "while [the party seeking vacatur of the arbitration decision] did not have full knowledge of all the relationships to which they now object, they did have concerns about [arbitrator's] impartiality and yet chose to have her remain on the panel rather than spend time and money investigating further until losing the arbitration.")

We agree with the trial court that to allow Ms. Bailey to challenge the arbitrator after an unfavorable award based on conflict of interest under these circumstances would afford Ms. Bailey an unfair advantage and thwart the purposes of arbitration. The arbitrator's disclosure did not purport to be complete and clearly placed Ms. Bailey on notice that her firm had represented AGLA both presently and in the past on unspecified matters. If we allow vacatur of the decision based on these facts, then we will reap the consequences warned of in *Lucent Technologies*: namely, parties might make strategic decisions not to challenge the selection of the arbitrator only to use the same grounds to challenge the award later. Given the arbitrator's disclosure about her firm's representation and her own skepticism that Ms. Bailey would accept her appointment, Ms. Bailey was required to avail herself of the opportunity to challenge the appointment of Ms. Moss based on this information rather than use it to later challenge the award.

## IV. CONCLUSION

Therefore, for the foregoing reasons and those contained in the trial court's orders, we affirm the trial court's denial of Ms. Bailey's request to vacate the award or, alternatively, conduct discovery. The judgment of the trial court is affirmed. Costs are assessed against the appellant, Sharon Bailey, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

13